## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

FELLOWSHIP OF CHRISTIAN UNIVERSITY
STUDENTS AT THE UNIVERSITY OF TEXAS
AT DALLAS, *et al.*,

       *Plaintiffs,*

v.

KEVIN P. ELTIFE, *et al.*,

       *Defendants.*

CASE NO. 1:25-cv-01411

---

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................ iii

Introduction .............................................................................................................. 1

Background .............................................................................................................. 2

Argument ................................................................................................................. 3

    I.  Plaintiffs Cannot Show that They Are Substantially Likely to Succeed on the
       Merits. ........................................................................................................... 4

       A.  Plaintiffs' claims are barred by sovereign immunity. ..................................... 4

       B.  Plaintiffs lack standing. ................................................................................ 7

           1.  Plaintiffs face no imminent threat of injury from enforcement of SB 2972. ............ 7

           2.  Plaintiffs face no imminent threat of injury for engaging in non-disruptive
               speech at any hour of the day or night. .................................................... 8

       C.  The challenged provisions regulating speech during the final two weeks of the
          semester are reasonable time, place, and manner restrictions. ...................... 9

    II.  The Remaining Factors Do Not Support Injunctive Relief. ............................... 12

Conclusion ............................................................................................................. 12

Certificate of Service.............................................................................................. 13

TABLE OF AUTHORITIES

**Cases**      **Page**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.,*
  851 F.3d 507 (5th Cir. 2017) ........................................................................... 4, 5, 6

*Carver v. Atwood,*
  18 F.4th 494 (5th Cir. 2021) ................................................................................... 6

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019) ................................................................................ 4, 5

*Doe v. Landry,*
  909 F.3d 99 (5th Cir. 2018) ..................................................................................... 9

*Edelman v. Jordan,*
  415 U.S. 651 (1974) ................................................................................................. 4

*Ex parte Young.,*
  209 U.S. 123 (1908) ............................................................................................. 1, 4

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ................................................................................................. 7

*Hays County Guardian v. Supple,*
  969 F.2d 111 (5th Cir. 1992) ................................................................................. 10

*K.P. v. LeBlanc,*
  729 F.3d 427 (5th Cir. 2013) ................................................................................... 4

*Kimel v. Florida Bd. of Regents,*
  528 U.S. 62 (2000) ................................................................................................... 4

*Louisiana v. Biden,*
  45 F.4th 841 (5thCir. 2022) ..................................................................................... 1

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................................................. 7

*Murthy v. Missouri,*
  603 U.S. 43 (2024) ................................................................................................... 7

*NAACP v. Tindell,*
  95 F.4th 212 (5th Cir. 2024) ................................................................................... 3

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) ................................................................................................... 4

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ................................................................................................... 7

*Tex. All. for Retired Americans v. Scott,*
    28 F.4th 669 (5th Cir. 2022) ................................................................. 4

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ................................................................. 5

*TikTok v. Garland,*
    604 U.S. 56 (2025) ................................................................................ 9

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) .............................................................................. 7

*U.S. v. O'Brien.,*
    391 U.S. 367 (1968) .............................................................................. 9

*United States v. Hansen,*
    599 U.S. 762 (2023) ............................................................................ 10

*Whole Women's Health v. Jackson,*
    595 U.S. 30 (2021) ............................................................................... 4

## Constitutional Provisions & Statutes

Tex. Educ. Code § 51.9315(d) ...................................................................

Tex. Educ. Code § 51.9315(f)(1)(A) .......................................................... 3

Tex. Educ. Code § 51.9315(f)(2) ............................................................... 2

Tex. Educ. Code § 51.9315(f)(2)(B)(ii)-(iv) ...............................................

Tex. Educ. Code § 51.9315(l) .................................................................... 2

Texas Education Code § 51.9315 .............................................................. 2

## Rules & Regulations

Fed. R. Civ. P. 8 ....................................................................................... 8

Fed. R. Civ. P. 12(h)(3) .......................................................................... 6, 7

Fed. R. Civ. P. 14 ..................................................................................... 8

Fed. R. Civ. P. 65(d) ................................................................................ 1

Defendants, The Board of Regents of The University of Texas System and its members; Chancellor John M. Zerwas, M.D.; UT Austin President, James E. Davis; and UT Dallas President, Dr. Rabhas V. Moghe, by and through the Office of the Attorney General of Texas and the undersigned counsel, file this their response to Plaintiffs' Motion for Preliminary Injunction and in support thereof, would show the court the following:

## INTRODUCTION

Plaintiffs' request for a preliminary injunction should be denied for at least three reasons: they cannot establish subject-matter jurisdiction; they are not likely to prevail on the merits; and their request for injunctive relief violates Federal Rule of Civil Procedure 65(d). First, Plaintiffs fail to establish subject-matter jurisdiction because their claims against Texas agencies and officials are barred by sovereign immunity, and they cannot invoke the exception recognized by *Ex parte Young.* 209 U.S. 123 (1908). Moreover, Plaintiffs cannot establish standing to challenge certain provisions of the Texas Education Code because they fail to demonstrate that they will suffer an imminent, concrete injury resulting from any Defendant's enforcement of those provisions against them. Second, Plaintiffs are not likely to prevail on the merits of their claims because they fail to engage with the specific university policies that govern their conduct, most or all of which do not limit Plaintiffs' speech as they allege in their Complaint. At any rate, the policies implemented following SB 2972 are reasonable, content-neutral time, place, and manner restrictions. Finally, Plaintiffs' requested relief—various iterations of "a preliminary and permanent injunction prohibiting Defendants and their agents, officials, servants, employees, and persons acting in concert with them, from enforcing any of the Challenged Prohibitions, or any policy or rule implementing any of the Challenged Prohibitions"—does not "describe in reasonable detail the conduct restrained or required," as required by Rule 65(d). *See Louisiana v. Biden*, 45 F.4th 841, 846 (5thCir. 2022). Plaintiffs have not carried their burden, they are not entitled to a preliminary injunction, their motion should be denied, and their Complaint should be dismissed without prejudice for lack of subject-matter jurisdiction.

**BACKGROUND**

The Legislature enacted Texas Education Code § 51.9315 in 2019 to protect freedom of speech on higher education campuses. Senate Bill 2972, enacted in the most recent regular session, modifies § 51.9315 in several ways, but it does not change the law's underlying policy of protecting freedom of speech. In fact, the Legislature added a new subsection (l) to remind campuses that nothing in the section may be used to infringe a person's right to freedom of speech guaranteed by the First Amendment. Tex. Educ. Code § 51.9315(l).). In addition, the law provides that any regulations of campus speech should be narrowly tailored to serve a significant institutional interest; employ clear, published, content-neutral, and viewpoint-neutral criteria; provide for ample alternative means of expression; and allow assemblies without a permit. *Id.* § 51.9315(d).

In the interest of preserving freedom of expression while protecting the educational mission and learning environment of public universities against undue disruption, SB 2972 provides that campus speech policies should prohibit certain activities such as intimidation, interference with campus operations, disruptive demonstrations during the last two weeks of the semester, camping, and wearing disguises or masks while engaging in expressive conduct. Tex. Educ. Code § 51.9315(f)(2).). SB 2972 also directs institutions to protect the ability of students to study and rest by imposing limits on expressive activity between 10:00 p.m. and 8:00 a.m. and during the week of final exams and the preceding week.

Plaintiffs challenge three specific provisions of SB 2972. First, Plaintiffs bring a First Amendment challenge to SB 2972's requirement that institutions adopt a policy that prohibits "during the last two weeks of a semester or term, engaging in expressive activities: . . . (ii) by inviting speakers to speak on campus; (iii) by using a device to amplify sound; or (iv) by using drums or other percussive instruments." Tex. Educ. Code § 51.9315(f)(2)(B)(ii)-(iv). Second, Plaintiffs bring a First Amendment challenge to SB 2972's requirement that institutions adopt policies that prohibit "engaging in expressive activities on campus between the hours of 10 p.m. and 8 a.m." Tex. Educ. Code § 51.9315(f)(2)(F). Third, Plaintiffs bring a void-for-vagueness challenge to SB 2972's requirement that institutions of higher education adopt policies that allow

2

"members of the university community to, subject to reasonable restrictions adopted under subsection (d), engage in expressive activities on campus, including by responding to the expressive activities of others." Tex. Educ. Code § 51.9315(f)(1)(A).

Plaintiffs now seek a preliminary injunction against the challenged provisions of SB 2972. Notably, Plaintiffs do not contend that any Defendant has enforced or threatened to enforce these statutory provisions against them. And although Plaintiffs contend that The University of Texas at Austin and the University of Texas at Dallas have revised their institutional policies in light of SB 2972, Mot. for Prelim. Inj. at 6, their claims focus on the provisions of SB 2972 ("the Act") rather than the universities' respective policies. They seek an injunction "prohibiting Defendants and their agents, officials, servants, employees, and persons acting in concert with them, from enforcing any of the Challenged Prohibitions, or any policy or rule implementing any of the Challenged Prohibitions, as applied to Plaintiffs' expression," "against any 'expressive activities' . . . at UT Austin and UT Dallas," and "against any 'expressive activities' . . . at any other UT System Institution." Compl. at 58.

### ARGUMENT

To secure a preliminary injunction against SB 2792, Plaintiffs must show that they are substantially likely to succeed on the merits, that enforcement of the challenged law will subject them to an irreparable injury, that the balance of hardships weighs in their favor, and that the public interest favors injunctive relief. *NAACP v. Tindell*, 95 F.4th 212, 215 (5th Cir. 2024). Plaintiffs' effort fails at the first step. They cannot show a substantial likelihood of success on the merits because their claims are barred by sovereign immunity, and they lack standing. Even without these fatal jurisdictional defects, Plaintiffs could not show a substantial likelihood of success because the challenged provisions of SB 2972, to the extent they might apply to Plaintiffs, are reasonable time, place, and manner restrictions. Nor can plaintiffs show that they will suffer irreparable injury or that the balance of hardships or the public interest support injunctive relief.

## I. Plaintiffs Cannot Show that They Are Substantially Likely to Succeed on the Merits.

### A. Plaintiffs' claims are barred by sovereign immunity.

This Court lacks subject-matter jurisdiction because Plaintiffs' claims are barred by sovereign immunity. "Generally, states are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Women's Health v. Jackson*, 595 U.S. 30, 39 (2021). Because "the fundamental principle of sovereign immunity limits the grant of judicial authority in [Article] III," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984), sovereign immunity deprives federal courts of subject-matter jurisdiction. *See e.g., Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) ("[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States."). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

Plaintiffs cannot overcome Defendants' sovereign immunity through the exception recognized in *Ex Parte Young.* 209 U.S. 123 (1908). The *Ex Parte Young* doctrine provides a limited exception to sovereign immunity, allowing individuals to bring suit for "prospective, injunctive relief from a state actor*,* in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *see generally Edelman v. Jordan*, 415 U.S. 651, 664-68 (1974) (providing an overview of the doctrine). The exception does not apply to a state agency such as the UT Board of Regents. To invoke *Ex parte Young*'s exception to sovereign immunity against a state official, a plaintiff must name an official who has "sufficient connection [to] the enforcement" of the challenged statute. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). To establish the requisite connection to enforcement, the official named as defendant "must have more than 'the general duty to see that the laws of the state are implemented.'" *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 999–1000 (5th Cir. 2019)). The defendant official "must have 'the particular duty to enforce the statute in question *and* a demonstrated willingness to

exercise that duty.'" *Id.* (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)) (emphasis added).

Here, Plaintiffs cannot meet the first of *Ex parte Young*'s criteria because none of the state officials named as Defendants has "sufficient connection [to] the enforcement" of the challenged statute. *Air Evac EMS, Inc.*, 851 F.3d at 519. Plaintiffs cannot establish that Defendant James E. Davis, President of UT Austin, or Defendant Prabhas V. Moghe, President of UT Dallas, have a particular duty to enforce any particular provision of UT Austin's or UT Dallas' policy, let alone the Texas Education Code. In their complaint, Plaintiffs merely allege that Defendants Davis and Moghe have "general authority and responsibility for the administration of" UT Austin and UT Dallas respectively, including "developing and administering policies 'for the program, organization, and operation of the institution,' 'policies relating to students,' and 'rules and regulations for the governance of the institution.'" Complaint ¶ 32 (quoting Univ. of Tex. Sys. Bd. of Regents R. 20201 §§ 4, 4.2, 4.3, 4.9).

UT Austin's own policies show, however, that the office of the Dean of Students has the duty to enforce the University's policies against students. Section 11-102 of the *Institutional Rules on Student Services and Activities* provides: "The Dean of Students has primary authority and responsibility for the administration of the university process for students alleged to have engaged in conduct that violates this Chapter. The Dean of Students delegates authority to, and is represented by, Student Conduct and Academic Integrity during the administration of the conduct process."[1] Section 11-402(a)(23) provides that the office of the Dean of Students is responsible for initiating disciplinary proceedings against students "suspected of engaging in or attempting to engage in behavioral misconduct," including "any conduct that violates any provision or rule defined in other chapters of the *Institutional Rules on Student Services and Activities* or the *Handbook*

---

[1] Chapter 11. Student Conduct and Academic Integrity < The University of Texas at Austin (last visited Sept. 17, 2025).

*of Operating Procedures.*" That includes violations of Chapter 13 of the *Institutional Rules*, which governs "Speech, Expression, and Assembly."[2] *See* McGee Decl. at ¶ 2.

Likewise, UT Dallas' policies show that the Dean of Students is the one charged with the duty of enforcing University policy against the students. UTDSP5003(B)(5). "The Dean of Students has primary authority and responsibility for the administration of the university process for students alleged to have engaged in conduct that violates a university rule or policy." *Id.* Smith Decl. The Dean of Students oversees and supervises the Office of Community Standards and Conduct ("OCSC"). Smith Decl. At UT Dallas the Dean of Students is responsible for Policy UTDSP5001, which is the Speech Policy, and is ultimately responsible for disciplining students who violate the University's Speech Policy. *Id.*

The Members of the UT System Board of Regents and Chancellor John Zerwas are not proper *Ex parte Young* defendants, either. Plaintiffs fail to show that Chancellor Zerwas and the members of the UT System Board of Regents have any enforcement authority at all in this matter. Plaintiffs' cComplaint alleges only that Chancellor Zerwas and the Regents have the general responsibility to promulgate and implement policies for the University of Texas System. *See* Compl. ¶¶ 28-32. Plaintiffs fail to identify any particular duty of the Chancellor or the Regents to enforce SB 2972 or to enforce the policies of UT Austin or UT Dallas against Plaintiffs or other students. Plaintiffs' claims against these Defendants are therefore barred by sovereign immunity.

Plaintiffs' claims against all Defendants are thus barred by sovereign immunity. It follows that this Court lacks subject-matter jurisdiction. That is a sufficient basis to deny Plaintiffs' motion for preliminary injunction, and it requires dismissal of Plaintiffs' complaint without prejudice for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (explaining that "*sua sponte* dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction").

---

[2] Chapter 13. Speech, Expression, and Assembly < The University of Texas at Austin (last visited Sept. 17, 2025).

### B. Plaintiffs lack standing.

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, "standing is not dispensed in gross"; "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). In this case, Plaintiffs cannot show an imminent, particularized injury-in-fact that is traceable to any of the named Defendants.

### 1. Plaintiffs face no imminent threat of injury from enforcement of SB 2972.

Plaintiffs lack standing to challenge SB 2972 because they face no possible threat that any named Defendant will enforce any provision of the statute against them. SB 2972 does not directly regulate students; it directs institutions of higher education to adopt certain policies. Rather than challenge those policies, Plaintiffs have chosen to direct their claims at SB 2972 alone. But SB 2972 will not be enforced against Plaintiffs by any state official. And even if Plaintiffs had challenged specific university policies, they would still lack standing because their alleged injuries from enforcement (if they existed) would not be traceable to any Defendant, none of whom is charged with enforcement of UT Austin or UT Dallas rules. Any injunction against enforcement of SB 2972 would therefore be pointless, as would an injunction against any of the named Defendants. Plaintiffs cannot establish standing. Their motion for preliminary injunction should be denied, and their complaint should be dismissed without prejudice for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

2.  **Plaintiffs face no imminent threat of injury for engaging in non-disruptive speech at any hour of the day or night.**

Plaintiffs Young Americans for Liberty, Zall Arvandi, and Texas Society of Unconventional Drummers (SOUnD) independently lack standing to challenge SB 2972's purported "overnight ban" because they face no threat of injury for any non-disruptive expressive activity between 10:00 p.m. and 8:00 a.m. UT Austin's *Institutional Rules* do not impose a blanket ban on expressive activities between 10:00 p.m. and 8:00 a.m. On the contrary, Section 13-304(3) provides that "the Common Outdoor Area is generally open for expressive activity" by students, faculty, and staff "from 8:00 a.m. through 10:00 p.m." Its restriction applies only to "[i]ndividuals and groups engaging in expressive activity outside of this permitted time period that is disruptive under Section 13-301." Moreover, UT Austin's policy provides that time, place, and manner restrictions under Chapter 13 "cannot ban unobtrusive forms of communication with no potential for disruption even in the specialized environment subject to the localized rule. Thus, for example, means of silent expression or protest confined to the speaker's immediate person, such as armbands, buttons, and T-shirts, are nearly always protected because they are rarely disruptive in any environment." *Institutional Rules* Sec. 13-304(2). Contrary to Plaintiffs' claim, no policy "will force YAL, its members, and Arvandi to cease speaking to one another (or to others) about their political views (and for all other noncommercial purposes) when the clock strikes 10:00." Motion at 13. Plaintiffs and all other students remain free, under UT Austin's policies, to "petition, talk, and post on social media before 8 A.M. and after 10 P.M." *Id.* at 8. Nor will SOUnD (or any UT student) violate UT Austin policy or face the threat of discipline "when rehearsals extend beyond—or end shortly before—10 P.M., or when members discuss music in person or over campus internet message after dark." *Id.* at 14. None of the Plaintiffs, and no student at UT Austin, faces a threat of injury for engaging in non-disruptive communications between 10:00 pm and 8:00 a.m.

### C. The challenged provisions regulating speech during the final two weeks of the semester are reasonable time, place, and manner restrictions.

Even if they could overcome sovereign immunity and establish standing, Plaintiffs could not show a substantial likelihood of success on their challenge to SB 2972's provision regarding expression during the final two weeks of the semester because the limitation of certain activities immediately before and during final exams is a reasonable time, place, and manner restriction. The reasonableness of content-neutral time, place, and manner restrictions is determined by a four-part test adopted in *U.S. v. O'Brien.* 391 U.S. 367, 377 (1968); *see Doe v. Landry*, 909 F.3d 99, 108 (5th Cir. 2018). Under that test, courts consider the following questions: (1) Is the law within the constitutional power of the state government; (2) Does the law further an important or substantial government interest; (3) Is the government interest unrelated to the suppression of expression; and (4) Are the incidental effects on expression no greater than necessary to further the government interest? *Id.*

As a threshold manner, the *O'Brien* test applies here because the restrictions articulated in Texas Education Code 51.9315 are content neutral. Plaintiffs make the novel argument that the law is content based because it limits "expressive activity" but excludes commercial speech from the definition of that term. In other words, Plaintiffs argue that the statute restricts *only* protected non-commercial speech and places no restrictions on commercial speech on university campuses. *See, e.g.*, Motion at 21-22. Plaintiffs' sleight-of-hand attempt to manufacture a content-based restriction fails.

The Supreme Court has identified two kinds of content-based speech regulation. *TikTok v. Garland*, 604 U.S. 56, 70 (2025). The first is when a law on its face "applies to a particular speech because of the topic discussed or the idea or message expressed." *Id.* The second is when a law that is facially content neutral is treated as if it were content based "if it cannot be justified without reference to the content of the regulated speech" or was "adopted by the government because of disagreement with the message the speech conveys." *Id.*

Neither category of content-based speech regulation encompasses the challenged statutory provisions, much less particular policies adopted by UT Austin or UT Dallas. Plaintiffs ignore the text of the universities' policies. As a result, they fail to recognize that both UT Austin and UT Dallas expressly restrict commercial speech by imposing limits on solicitation. *See* UT Austin, *Institutional Rules* Sec. 13-205 ("Solicitation & Commercial Speech"); [UT Dallas, UTDSP5001 Section B, Subsection 8 ("Solicitation & Commercial Speech")]. Nothing in Section 51.9315 and nothing in either institution's policy favors or disfavors speech based on its content.

Given that the statute is content-neutral, it is properly analyzed using the *O'Brien* factors. The law is certainly within the constitutional powers of the State of Texas to regulate behavior on its public university campuses. *Hays County Guardian v. Supple*, 969 F.2d 111, 116-17 (5th Cir. 1992). Education Code § 51.9315 furthers this important and substantial interest using reasonable content-neutral time, place, and manner restrictions. *See* Katie McGee and Amanda Smith Decls. The interest of the government in having students in an environment conducive to learning is unrelated to free expression. Finally, the incidental impacts on protected speech are no greater than necessary to further the government's interest.

Relying on the text of subsections (f)(2)(B)(ii), (iii), and (iv) as well as (f)(2)(F), Plaintiffs imagine a host of unreasonable and implausible restrictions on speech. This is one of many reasons why Plaintiffs' facial challenge would fail even if they could establish jurisdiction. *See, e.g.*, *United States v. Hansen*, 599 U.S. 762, 770 (2023) ("To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."). Plaintiffs claim, for instance, that the prohibition on percussive instruments during the final two weeks of the semester "applies anywhere on campus, in any context," including "indoor performances by SOUnD in venues specifically set aside for musical performances," "prohibit[ing] SOUnD from even ringing a bicycle bell on an indoor stage, as in their "Metal to the Pedal" performance." Motion at 22-23. But UT Austin's policy limits the use of percussive instruments only in Common Outdoor Areas of campus. *See Institutional Rules* § 13-105(2)(D). Plaintiffs also complain that the end-of-semester limitations would "ban any amplified

sound, drawing no distinction between a bullhorn in a library and an iPhone in an outdoor area of campus." Motion at 22. But there is no basis to think that students will face discipline for such ordinary conduct as using an iPhone in a nondisruptive manner.

On the contrary, the end-of-semester restrictions on speech contemplated by SB 2972 impose minimal restrictions and leave open multiple alternative avenues for expression. To be sure, some of the activities Plaintiffs identify would be prohibited during that limited time, but Plaintiffs still have a number of ways to communicate with other students. Although SOUnD may not perform outdoors, it may "continue its indoor . . . end-of-semester music performances." Motion at 8. Student organizations may not "use megaphones while soliciting support for petitions," Motion at 8, or invite off-campus persons "to speak on campus to prospective members, and to assist with petitioning activity (including through use of a megaphone)," *id.* at 13, during the last two weeks of the semester. But under UT Austin policies, for example, they may continue to display signs, distribute literature, set up tables, and talk to fellow students. *See* McGee Decl. at ¶ 9. And students may continue to use amplified sound, subject to general university policies, in parts of campus other than Common Outdoor Areas. *See Institutional Rules* Sec. 13-105(2)(D)(iii).

Limited restrictions on expressive activities during finals week and the week preceding final exams directly promote the State's important interest in maintaining effective institutions of higher education. Academic activities during the final two weeks of the semester have a disproportionate effect on a student's course grades. These include final exams, end-of-semester projects and presentations, and non-final exams that are often weighted more heavily than exams earlier in the semester. McGee Decl. at ¶ 10; Smith Decl. at ¶ 11. Distractions during this critical period can have serious consequences to students' grades, academic progress, and continued access to aid and scholarships. The increased stress that students experience during this period is reflected by the increase in reported mental health concerns. McGee Decl. at ¶ 10. Universities do not rely on speculation to justify limits on particularly disruptive activities. Amplified sound in outdoor areas carries through walls, interrupting presentations and exams. Large outdoor

gatherings can restrict access to campus or cause exams to be rescheduled. *Id.* ¶ 11. Because these activities present a high risk of becoming disruptive in a manner that is nearly impossible to predict or control, it is entirely reasonable to restrict them to avoid the attendant risk of negatively impacting students while they study for and take final exams. *Id.* ¶ 12. Indeed, Universities have an obligation to protect students' investment in their education by providing an environment free from these potential disruptions to give students the best opportunity to succeed in their studies and earn their degrees. *Id.*

The restrictions on end-of-semester speech outlined in SB 2972 are reasonable, content-neutral time, place, and manner restrictions necessary to promote the State's important interest in delivering effective public higher education. Even if this Court had jurisdiction, and even if Plaintiffs had standing, they could not show that their challenge to this provision of SB 2972 is likely to succeed on the merits.

## II. The Remaining Factors Do Not Support Injunctive Relief.

Plaintiffs cannot satisfy the remaining requirements for preliminary injunctive relief, nor could any of those factors outweigh their failure to show any prospect of success on the merits. The public's interest in its college students having peace and quiet to rest and prepare for and take final exams without avoidable disruptions outweighs the bill's negligible impact on legitimate freedom of expression.

### CONCLUSION

Plaintiffs' claims are barred by sovereign immunity, and they cannot establish standing. This Court therefore lacks subject-matter jurisdiction. Nor can Plaintiffs meet the criteria necessary to support the extraordinary relief they request. Plaintiffs' motion for preliminary injunctive relief should be denied, and their Complaint should be dismissed without prejudice.

Date: September 18, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted.

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100

COUNSEL FOR THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on September 18, 2025, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

JT MORRIS (Tex. Bar No. 24094444)
FOUNDATION FOR INDIVIDUAL RIGHTS AND
EXPRESSION (FIRE)
(215) 717-3473
700 Pennsylvania Ave., Suite 340
Washington, DC 20003
jt.morris@thefire.org

ADAM STEINBAUGH (Cal. Bar No. 304829)*
SARA BERINHOUT (Mass. Bar No. 703217)*
HANNAH ABBOTT (Pa. Bar No. 337123)*
FOUNDATION FOR INDIVIDUAL RIGHTS AND
EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
adam@thefire.org
sara.berinhout@thefire.org
hannah.abbott@thefire.org

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel