**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT UNIVERSITY OF TEXAS AT DALLAS, et al., | Civil Case No. 1:25-cv-1411-DAE |
| Plaintiffs, | |
| v. | |
| KEVIN P. ELTIFE, et al., | |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A**
**PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................1

    I.     Defendants Are Not Entitled to Sovereign Immunity..............................1

    II.    Plaintiffs Have Standing to Challenge the Act and its Implementing
          Policies.........................................................................................................4

    III.   Plaintiffs Are Likely to Succeed on the Merits of Their Challenge to the Act
          and the Universities' Implementing Policies. ..........................................6

          A.     The Act and the Implementing Policies Are Content-Based. ....................6

          B.     The Challenged Provisions Also Fail Intermediate Scrutiny.....................7

          C.     The Act's Staggering Breadth Highlights Its Danger to Campus
                 Expression. ................................................................................................ 9

    IV.   The Remaining Preliminary Injunction Factors Favor Plaintiffs..........................10

CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Air Evac EMS, Inc. v. Tex. Dep't of Ins. Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) ........................................................................ 4

*CISPES (Comm. in Solidarity with People of El Salvador) v. F.B.I.*,
  770 F.2d 468 (5th Cir. 1985) ...................................................................... 10

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ........................................................................ 2

*City of Austin v. Reagan Nat'l Advert. of Aus., LLC*,
  596 U.S. 61 (2022) ........................................................................................ 6

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993) ...................................................................................... 6

*City of Ladue v. Gilleo*,
  512 U.S. 43 (1994) ........................................................................................ 8

*Coal. for Indep. Tech. Rsch. v. Abbott*,
  706 F.Supp.3d 673 (W.D. Tex. 2023) ........................................................... 3

*Ex parte Young*,
  209 U.S. 123 (1908) ................................................................................... 1, 2

*Houston Chronicle Pub. Co. v. City of League City*,
  488 F.3d 613 (5th Cir. 2007) ........................................................................ 5

*Jackson v. Wright*,
  82 F.4th 362 (5th Cir. 2023) ............................................................... 1, 2, 3, 4

*Louisiana v. Biden*,
  45 F.4th 841 (5th Cir. 2022) ....................................................................... 10

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
  460 U.S. 37 (1983) ........................................................................................ 8

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ...................................................................................... 7

*Roake v. Brumley*,
  141 F.4th 614 (5th Cir. 2025) ....................................................................... 3

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  592 U.S. 14 (2020) ...................................................................................... 10

*RTM Media, L.L.C. v. City of Houston,*
    584 F.3d 220 (5th Cir. 2009) ......................................................................... 7

*Spectrum WT v. Wendler,*
    No. 23-10994, __ F.4th __, 2025 WL 2388306 (5th Cir. Aug. 18, 2025) ..................... 2, 4

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ............................................................... 4, 5, 6, 10

*Speech First, Inc. v. Sands,*
    144 S.Ct. 675 (2024) ..................................................................................... 9

*Students Engaged in Advancing Texas v. Paxton,*
    765 F.Supp.3d 575 (W.D. Tex. 2025)............................................................... 7

*Students for Just. in Palestine, at Univ. of Houston v. Abbott,*
    756 F.Supp.3d 410 (W.D. Tex. 2024)............................................................... 4

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014).................................................................................... 5

*Texas v. Johnson,*
    491 U.S. 397 (1989).................................................................................... 9

*United States v. O'Brien,*
    391 U.S. 367 (1968).................................................................................... 9

*United States v. Stevens,*
    559 U.S. 460 (2010).................................................................................... 9

**<u>Statutes</u>**

Tex. Educ. Code
    § 65.31(a) ................................................................................................ 2
    § 51.9315(f)(2)(B)...................................................................................... 9
    § 51.9315(f)(2)(F).................................................................................. 6, 9
    § 51.9315(f)(6) ......................................................................................... 3

**<u>Rules</u>**

Fed. R. Civ. P. 15(a) ....................................................................................... 4

Univ. of Tex. Sys. Bd. of Regents R. 20101
    § 2.1....................................................................................................... 2
    § 4.1....................................................................................................... 3
    § 4.3.................................................................................................... 3, 4
    § 4.9....................................................................................................... 3

UT Austin R.

§ 11-300(a)(5) ........................................................................................... 4
§ 11-300(a)(16) ......................................................................................... 4
§ 11-300(a)(25) ......................................................................................... 4
§ 11-504(g)(2) ........................................................................................... 4
§ 11-504(g)(3) ........................................................................................... 4
§ 13-1202 .................................................................................................. 4

## **Other Authorities**

UT System Board of Regents August 20–21, 2025 Meeting Consent Agenda ............................. 3

Video of UT System Board of Regents' Meeting (Aug. 21, 2025) ................................................. 3

## INTRODUCTION

The Campus Protection Act imposes a sweeping chill on First Amendment rights at Texas's public universities. It commands UT System institutions to prohibit nearly all protected expression 10 hours out of every day—and commands them to prohibit a vast range of protected expression at the end of academic terms. Plaintiffs are a diverse set of UT System students, student organizations, and a political advocacy group who engage in expression those prohibitions restrict. They are suing the UT System officials and institution presidents responsible for effecting the Act's mandates, seeking the prospective relief necessary to halt the Act's extraordinary censorship.

This is an easy case for Article III standing. So too for holding that Defendants lack sovereign immunity under *Ex parte Young*. No matter what Defendants argue, they cannot avoid Fifth Circuit precedent and decisions from this District making clear that because Defendants play a role in carrying out the Act's mandatory prohibitions on campus speech, they have no sovereign immunity from this First Amendment challenge.

Nor can Defendants avoid precedent establishing that the Act mandates content-based restrictions on protected expression. And despite Defendants' interest in preventing disruption on campus, they cannot justify the overwhelming breadth of non-disruptive expression the Act and its implementing policies restrict. Texas's sweeping censorship mandate cannot survive First Amendment scrutiny. Thus, this Court should grant Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

### I.    Defendants Are Not Entitled to Sovereign Immunity.

The *Ex parte Young* exception to sovereign immunity applies here because Plaintiffs have "sue[d] the right defendants and ask[ed] for the right remedy." *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023) (citing *Ex parte Young*, 209 U.S. 123 (1908)). In fact, just two years ago, the Fifth Circuit in *Jackson* rejected a similar sovereign immunity defense from members of the

1

University of North Texas System Board of Regents. *Id.* at 367–68. *Jackson*—which Defendants ignore—should guide this Court in rejecting Defendants' sovereign immunity claim.

In *Jackson*, University of North Texas administrators removed a professor from his role on an academic journal after students complained the journal was publishing "racist sentiments." *Id.* at 365–66. The professor sued for First Amendment retaliation, seeking prospective relief against UNT Board of Regents members. *Id.* The board members played no direct role in removing him. Still, the Fifth Circuit held the board's role as the university's governing body met *Ex parte Young*'s requirement that officials have "some connection with the enforcement of the challenged law or policy." *Id.* at 367 (quoting *Ex parte Young*, 209 U.S. at 157) (cleaned up).

If university board members with no direct role in a First Amendment violation were the "right defendants" under *Ex parte Young* in *Jackson*, then Defendants are the "right defendants" here. For *Ex parte Young* to apply, "all that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law." *Id.* (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)) (cleaned up). The Board Defendants, Chancellor Zerwas, and Presidents Davis and Moghe all meet that requirement, because all have sufficient "governing authority" over the Act's unconstitutional mandates. *See id.*; *see also Spectrum WT v. Wendler*, No. 23-10994, __ F.4th __, 2025 WL 2388306, at *11–12 (5th Cir. Aug. 18, 2025) (chancellor with "direct authority and responsibility" over a university president who banned protected expression was "right defendant" under *Ex Parte Young*).

The Board Defendants must "govern, operate, support, and maintain" UT Austin and UT Dallas. Tex. Educ. Code § 65.31(a). Chancellor Zerwas has "*direct* line responsibility" for UT System operations. Univ. of Tex. Sys. Bd. of Regents R. 20101 § 2.1 (emphasis added). And Presidents Davis and Moghe must develop and administer "policies relating to students" and "rules

and regulations for the governance of the institution." *Id.* at R. 20201 §§ 4.1, 4.3 & 4.9. So under *Jackson*, Defendants' "governing authority" alone, 82 F.4th at 367, defeats any argument they lack "sufficient connection" to enforcing the Act and its implementing policies. Dkt. 9 ("Defs.' Br.") at 5.

Defendants' connection with the Act does not end with their governance authority. Defendants do not, as they suggest, have only a "general duty to see that the laws of the state are implemented." *Id.* at 4–5. The "general duty" rule preserves sovereign immunity only if state officials "had *no* role whatsoever in the alleged constitutional violations," including a supervisory role. *Jackson*, 82 F.4th at 367–68 (collecting cases). But Defendants are "not merely *permitted* to adopt rules and regulations implementing" the Act—they "*must* do so." *Roake v. Brumley*, 141 F.4th 614, 639 (5th Cir. 2025) (denying sovereign immunity).

The Texas Education Code requires the Board Defendants to review and approve UT System institutional policies implementing the Act, which they did.[1] Tex. Educ. Code § 51.9315(f)(6). Chancellor Zerwas also confirmed his role in carrying out the Act's unconstitutional mandates, recommending to the Board Defendants that they approve UT Austin's and UT Dallas's revised policies implementing the Act's mandates.[2] *See Coal. for Indep. Tech. Rsch. v. Abbott*, 706 F.Supp.3d 673, 683 (W.D. Tex. 2023) (holding UNT chancellor lacked sovereign immunity over role in implementing Texas's TikTok ban). And although the deans of students at UT Austin and UT Dallas have authority to enforce policies implementing the Act's mandates, that does not make Presidents Davis and Moghe the wrong defendants under *Ex parte*

---

[1] Video of UT System Board of Regents' Meeting at 5:11–7:52 (Aug. 21, 2025), https://bit.ly/utsysvideo (approving consent agenda with campus policies implementing the Act).

[2] UT System Board of Regents August 20–21, 2025 Meeting Consent Agenda at 252, https://bit.ly/utsysagendaaugust2025.

*Young*, despite Defendants' insistence.[3] *See* Defs.' Br. 5–6. Rather, the Presidents are responsible for policies relating to students, sufficiently connecting them to enforcing the Act and institutional policies implementing it. *See Spectrum WT*, 2025 WL 2388306, at *12; Univ. of Tex. Sys. Bd. of Regents R. 20201 § 4.3. They also play a direct role enforcing those policies. For instance, President Davis hears petitions of student disciplinary actions and can appoint personnel to hear violations of the University's implementing policies. UT Austin R. §§ 11-300(a)(5), (16), (25); 11-504(g)(2)–(3); & 13-1202; *see also Students for Just. in Palestine, at Univ. of Houston v. Abbott*, 756 F.Supp.3d 410, 419 (W.D. Tex. 2024) (UT Austin president lacked sovereign immunity in First Amendment challenge). President Moghe has the same appointment power. UTD Revised Policy § 49(5) (Dkt. 1-5 at 7–8).

Finally, Defendants do not meaningfully contest that Plaintiffs are seeking the "right remedy" to establish the *Ex parte Young* exception. *See Jackson*, 82 F.4th at 367. For all these reasons, the Court should hold Defendants do not have sovereign immunity.

## II. Plaintiffs Have Standing to Challenge the Act and its Implementing Policies.

Not only have Plaintiffs established Article III standing for the same reasons Defendants lack sovereign immunity, *Air Evac EMS, Inc. v. Tex. Dep't of Ins. Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017) (noting "significant overlap" between Article III standing and *Ex parte Young* analyses), they have also shown Article III injury—particularly at this early stage where "the manner and degree of evidence required to show standing is less than at later stages." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020). In a pre-enforcement First Amendment challenge, plaintiffs suffer an Article III injury if (a) they have the "intention to

---

[3] If the Court determines the deans of students at UT Austin and UT Dallas are necessary defendants, Plaintiffs can amend their complaint to include them. *See* Fed. R. Civ. P. 15(a).

engage in a course of conduct arguably affected with a constitutional interest," (b) the conduct is "arguably ... proscribed by" the challenged policy, and (c) "the threat of future enforcement of the [challenged policies] is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014). Defendants do not dispute that Plaintiffs intend to engage in protected expression. Instead, they insist Plaintiffs "face no imminent threat of injury." Defs.' Br. 7–8. They are wrong.

Above all, Defendants ignore how the Fifth Circuit "has repeatedly held, in the pre-enforcement context, that '[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.'" *Speech First*, 979 F.3d at 330–31 (quoting *Houston Chronicle Pub. Co. v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)). Here, Plaintiffs verify how the Act's prohibitions on speech—and the implementing campus policies—chill newsgathering and reporting, worship, political advocacy, musical performance, and discussions of faith. Dkt. 1, Verif. Compl. ¶¶ 171–174, 176, 178–181, 184, 186–192, 194–95, 197–200, 202–205.

Unable to escape the Act's chilling harm, Defendants focus on UT Austin and UT Dallas's implementing policies, asserting Plaintiffs "direct their claims at SB 2972 alone." Defs.' Br. 7–9. But Defendants misstate Plaintiffs' argument. Plaintiffs explain how both the Act *and* the implementing policies violate their First Amendment rights and open them to discipline. *E.g.*, Dkt. 1, Verif. Compl. ¶¶ 154–157, 165, 170, 177, 181, 184–185, 196, 199, 201, 204; Dkt. 6 ("Pls.' Br.") 6–7, 12, 16, 21, 24. At the same time, Defendants do not contest UTD FOCUS, *The Retrograde*, Strings Attached, and YAL have standing to challenge UT Dallas's policies effecting the Act's unconstitutional mandates. Nor could they—the dean of students concedes UT-Dallas "revise[d] the Speech Policy to comply with the full text of [SB 2972]." Dkt. 9-2, Smith Decl. ¶ 6.

So too have Defendants failed to contest that YAL, Arvandi, and SOUnD have standing to challenge UT Austin policies implementing the End-of-Term Bans. Instead, they argue only that

5

those three plaintiffs lack standing to challenge the Overnight Ban, because UT Austin's policies "do not impose a blanket ban on expressive activities between 10:00 p.m. and 8:00 a.m." Defs.' Br. 8. True enough. But that makes no difference as to YAL, Arvandi, and SOUnD's standing.

A "plaintiff who mounts a pre-enforcement statutory challenge on First Amendment grounds need not show that the authorities have threatened to prosecute him …; the threat is latent in the existence of the statute." *Speech First*, 979 F.3d at 336 (cleaned up). That threat is heightened here because the Act *mandates* that UT Austin "prohibit" expressive activities on campus between 10 P.M. and 8 A.M. Tex. Educ. Code § 51.9315(f)(2)(F). And that mandate dooms Defendants' argument, as UT Austin cannot give "absolute certainty" it will not carry out the Legislature's command. *See Speech First*, 979 F.3d at 329. Even UT Austin's current policy underscores a chilling injury, vesting "administrators and law enforcement" with unbridled discretion to determine what expression is disruptive. Dkt. 9-1, McGee Decl. ¶ 7; *see also* infra, III.C.

Finally, Defendants miss the mark claiming that Plaintiffs' injuries are not traceable to Defendants. As Plaintiffs detail above, Texas law and UT System policy makes each Defendant responsible for carrying out the Act's mandatory prohibitions on protected speech that are irreparably injuring Plaintiffs. By any standard, those injuries are traceable to Defendants.

## III. Plaintiffs Are Likely to Succeed on the Merits of Their Challenge to the Act and the Universities' Implementing Policies.

### A. The Act and the Implementing Policies Are Content-Based.

Binding precedent makes clear each of the Act's challenged provisions and the institutions' implementing policies is content-based in applying to only noncommercial expression. While Defendants call this a "novel" argument, Defs.' Br. 9, they are mistaken. *See* Pls.' Br. 14–15 (citing *City of Austin v. Reagan Nat'l Advert. of Aus., LLC*, 596 U.S. 61, 74 (2022), *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429–30 (1993), and *RTM Media, L.L.C. v. City of Houston*,

584 F.3d 220, 224–25 (5th Cir. 2009)). Quite simply, the Act's provisions and the implementing policies are presumptively unconstitutional because they require reference to the expression's content. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015); Pls.' Br. 15.

Although Defendants characterize the universities' policies as "expressly restrict[ing] commercial speech by imposing limits" on commercial speech (Defs.' Br. 10), that does not save them from the strict scrutiny a content-based regulation demands. By the Act's plain text, the challenged provisions exclude commercial speech. Even more so, the universities' policies *permit* a range of commercial speech. Student organizations at both campuses can "advertise … merchandise," "request contributions" and "sell, distribute, and display literature that contains advertising," and individual students may even invite salespeople into residence halls to "offer products or services for sale." UTA Revised Policy § 13-205(2)(A)–(D) (Dkt. 1-6 at 7–8); UTD Revised Policy § 8(2)(a)–(d) (Dkt. 1-5 at 7–8). Just like the Act, the universities' policies require administrators to examine the content of speech to determine whether it is noncommercial and subject to the Act's restrictions. That is a textbook content-based regulation under *Reed*, 576 U.S. at 164. And Defendants offer no answer to the strict scrutiny a content-based regulation demands, all but conceding the Act's unconstitutionality. *See Students Engaged in Advancing Texas v. Paxton*, 765 F.Supp.3d 575, 599 (W.D. Tex. 2025) (holding Texas statute violated the First Amendment, where the state did "not seriously contest that the restriction fails strict scrutiny").

## B.    The Challenged Provisions Also Fail Intermediate Scrutiny.

Even if the challenged provisions and implementing policies are content-neutral time, place, and manner restrictions, they still violate the First Amendment. To start, they are not narrowly tailored. *E.g.*, Pls.' Br. 17–19. The Act far exceeds Defendants' proffered interests of "peace and quiet" and preventing "distractions" and "stress" during finals. Defs.' Br. 11–12. Defendants do not dispute the Act's End-of-Term bans limit speech 98 days of the year, reaching

expression that will have zero effect on students' ability to study. Adult students, not administrators, should decide whether they can both study for exams and de-stress by listening to a concert or praying with a pastor. And a restriction on *all* noncommercial expression between 10:00 p.m. and 8:00 a.m., 365 days a year, regulates leaps-and-bounds more expression than necessary to maintain "peace and quiet" on a bustling state university campus.

It is no surprise, then, that Defendants make no effort to justify the Act or its implementing regulations at UT Dallas, which—as the Act requires—adopted the Act verbatim as "required by law." *See* UTD Revised Policy §§ B.9(6) & (9) (Dkt. 1-5 at 8–9). Instead, they defend only UT Austin's end-of-term bans as sufficiently narrow. But even that depends on a strained reading of the UT Austin policy. For instance, Defendants claim UT Austin's policy would not reach indoor musical performances, like Plaintiff SOUnD's, because the policy applies only to "Common Outdoor Areas." Defs.' Br. 10 (citing UTA Revised Policy § 13-105(2)(D) [Dkt. 1-6 at 5]). Yet they ignore how the provision on "expressive activities in Common Outdoor Areas" that cause a disruption to the campus community is *distinct* from the blanket End-of-Term Bans on amplified sound and percussion instruments that include no reference to disruption or location. *See id.*

Nor do the challenged provisions leave open alternative avenues of expression, as the First Amendment requires. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). Closing off an entire campus to all expression overnight lacks *any* alternative avenues—especially (but not only) for students who live on campus. Though Defendants argue the End-of-Term Bans still allow students "to display signs, distribute literature, set up tables, and talk to fellow students," that doesn't save the Act. In fact, the Supreme Court rejected that argument decades ago. *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994). Hosting invited speakers and performing music to share a message are "quite distinct" from displaying a sign or merely talking. *Id.*

8

The Court should also reject Defendants' arguments under *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Defs.' Br. 9. *O'Brien* has no place here because the Act is *not* "unrelated to the suppression of free expression." *Id.* Rather, it applies only to "expressive activities." Tex. Educ. Code § 51.9315(f)(2)(B) & (F). That is no "incidental burden" on speech—it is a direct regulation of expression, targeting "particular conduct *because* it has expressive elements" and is "*directed at* [its] communicative nature[.]" *Texas v. Johnson*, 491 U.S. 397, 406 (1989).

In effect, Defendants get *O'Brien* backwards: The Act is a speech regulation that impacts conduct incidentally. For the same reasons the Act and implementing policies fail narrow tailoring, they fail *O'Brien*'s requirement that any limitation on "First Amendment freedoms is no greater than is essential to the furtherance of" a cognizable government interest. *O'Brien*, 391 U.S. at 377.

C.     **The Act's Staggering Breadth Highlights Its Danger to Campus Expression.**

The Act requires officials to limit a shocking range of speech ten hours a day and 98 days a year. As one might expect, Defendants have no answer for Plaintiffs' overbreadth claim. Still, they urge the Act's scope is excusable because they will decide whether speech is "legitimate." *E.g.*, Dkt. 9-2, Smith Decl. ¶ 8 (staff and police "should clearly state what *they consider disruptive* and seek voluntary compliance") (emphasis added); Dkt. 9-1, McGee Decl. ¶ 7 (same); Defs.' Br. 12. But overbroad statutes and policies in the hands of officials is a recipe for censorship. That is why the First Amendment does not permit the "*noblesse oblige*" deference to the Act that Defendants demand. *United States v. Stevens*, 559 U.S. 460, 480 (2010).

Legislatures cannot direct universities to restrict protected speech, and universities cannot in turn appoint "literal speech police" to separate the wheat from the chaff. *See Speech First, Inc. v. Sands*, 144 S.Ct. 675, 675 (2024) (Thomas, J., dissenting). The obvious potential for abuse of authority is why the Fifth Circuit has warned against deferring to "institutional leaders" who deliver censorship to college campuses "in a spirit of panicked damage control[.]" *Speech First,*

979 F.3d at 339. And the Act's saving clause cannot mitigate those dangers: "mere restatement of well-settled constitutional restrictions on" statutory interpretation does nothing "to save an otherwise invalid statute." *CISPES (Comm. in Solidarity with People of El Salvador) v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985). By any measure, the Act and its implementing provisions violate the First Amendment, establishing Plaintiffs' likely success on the merits. [4]

## IV.    The Remaining Preliminary Injunction Factors Favor Plaintiffs.

The speech-chilling Act and its implementing policies are "unquestionably" causing Plaintiffs irreparable harm that only a preliminary injunction can remedy. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (citation omitted). The public interest in safeguarding student expression also favors an injunction. And existing institutional policies adequately cover any interests Defendants have in addressing disruptive conduct. *E.g.*, UTA Revised Policy §§ 13-301 (Dkt. 1-6 at 9–10) (prohibiting "disruptive activities"); UTD Revised Policy § C.10 (Dkt. 1-5 at 9–10) (same).

Defendants are wrong that the requested injunction contravenes Federal Rule of Civil Procedure 65(d). An injunction meets the Rule's requirements where "an ordinary person reading the court's order" is "able to ascertain from the document itself exactly what conduct is proscribed." *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022). An order requiring university officials, assisted by capable legal counsel, to refrain from enforcing specific regulations they have exercised their authority to adopt and implement meets that standard.

## <u>CONCLUSION</u>

Plaintiffs ask that the Court grant their motion for a preliminary injunction.

---

[4]  Defendants do not contest that public forum doctrine is not an appropriate framework of analysis of the Act. *See* Pls.' Br. 19–20.

Dated: September 25, 2025                          Respectfully submitted,

/s/ JT Morris
JT Morris (Tex. Bar No. 24094444)
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION (FIRE)
(215) 717-3473
700 Pennsylvania Ave., Suite 340
Washington, DC 20003
jt.morris@thefire.org


Adam Steinbaugh (Cal. Bar No. 304829)*
Sara Berinhout (Mass. Bar No. 703217)*
Hannah Abbott (Penn. Bar No. 337123)*
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
adam@thefire.org
sara.berinhout@thefire.org
hannah.abbott@thefire.org

*Pro hac vice motion pending*

**Attorneys for Plaintiffs Fellowship of
Christian University Students at UT Dallas,
The Retrograde, Young Americans for
Liberty, Inc., Zall Arvandi, Texas Society of
Unconventional Drummers, and Strings
Attached**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 25th day of September, 2025, a true and correct copy

of Plaintiffs' motion was served via the CM/ECF system to all counsel of record.

/s/ *JT Morris*_____
