THE UNIVERSITY OF TEXAS AT DALLAS
Handbook of Operating Procedures

**UTDSP5001**

# Speech Expression and Assembly

## Policy Statement

## Section A: Governing Principles

### Subsection 1: Freedom of Speech, Expression, and Assembly

1. The freedoms of speech, expression, and assembly are fundamental rights of all persons and are central to the mission of the University. Students, faculty, and staff have the right to assemble, to speak, and to attempt to attract the attention of others, and corresponding rights to hear the speech of others when they choose to listen and to ignore the speech of others when they choose not to listen.
2. In furtherance of the University's educational mission, the University buildings, including their outside surfaces, surfaces associated with or connected to a University building, or a University structure are limited public forums open only to the expressive activities of faculty, staff, and students as set forth in this policy. Members of the public may engage in expressive activities at the University in accordance with time, place, and manner rules contained in this policy.
3. Students, faculty, and staff are free to express their views, individually or in organized groups, orally or in writing or by other symbols, on any topic, in all parts of the campus, subject only to rules necessary to preserve the equal rights of others and the other functions of the University. Teaching, research, and other official functions of the University shall have priority in allocating the use of space on campus. Members of the public are able to engage in expressive activities only in common outdoor areas of the campus, subject to the time, place, and manner rules in this policy necessary to preserve the functions of the University.
4. Except as expressly authorized by Section B or as identified in federal or state law, the University shall not discriminate on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed by any person, in the enforcement and administration of these rules or otherwise.

5. The University of Texas at Dallas Police Department (UTDPD) may immediately enforce these rules if a violation of these rules constitutes a breach of the peace or compromises public safety.

## Subsection 2: Scope of this Policy and Related Provisions

1. This policy protects and regulates the speech, expression, and assembly of students, faculty, staff, and members of the public that are not part of the teaching, research, or other official functions of the University, not otherwise sponsored by the University or any academic or administrative unit, and not submitted for academic credit. Subsection 7 on Harassment applies to all speech regardless of where it occurs, including off University property, if it potentially affects a University person's education or employment with the University or potentially affects the University community.
2. This policy applies to speech by University persons and University organizations in the common outdoor areas, the limited public forums, and speech made using the University's information systems. This policy also applies to members of the public in common outdoor areas.
3. Any program or event sponsored by an academic or administrative unit of the University will have priority in the use of space and facilities over any speech, expression, and assembly that is not sponsored by an academic or administrative unit. Reservation process and available space for academic or administrative units are different and separate from those outlined in this policy. This policy does not limit other existing authority of University officials to authorize programs and events sponsored by an academic or administrative unit not provided for in this policy.
4. Additional rules concerning free speech and academic freedom of faculty members are found in the Regents' Rules and Regulations (Rule 31004, Number 2, Sections 1 and 2).
5. Underlying rules concerning free speech of students are found in the Regents' Rules and Regulations (Rule 40501, Rule 80103, and Rule 80104). This policy implements those provisions and applies them to UT Dallas.
6. Rules requiring University employees to make clear that controversial statements they make are in their personal capacity are found in the Regents' Rules and Regulations (Rule 10101, Section 6.2). Rules restricting use of University equipment, supplies, services, and working hours for political activities are found in the Regents' Rules and Regulations (Rule 30103).

## Subsection 3: Definitions

1. "Academic or administrative unit" means any office or department of the University.
2. "Faculty member and staff member" includes any person who is employed by the

University.

3. "Off-Campus person or organization" and “member of the public” means any person, organization, or business that is not an academic or administrative unit; a registered student, faculty, or staff organization; or a student, faculty member or staff member.
4. "University person or organization" includes academic and administrative units; registered student, faculty, and staff organizations; and individual students, faculty members, and staff members. This phrase describes the most inclusive category of potential speakers on campus; all persons and organizations of any kind are either an "off-campus person or organization" or a "University person or organization."
5. "Registered student, faculty, or staff organization" includes a registered student organization (as defined in the UT Dallas Student Organization Manual, Chapter 2), a faculty or staff organization under the Regents’ Rules and Regulations (Rule 40201), and Student Government and any unit or subdivision thereof.
6. "Student" means a person who is enrolled at the University.
7. "Amplified sound" means sound with volume that is increased by any electric, electronic, mechanical, or motor-powered means. Shouting, group chanting, and acoustic musical instruments are not amplified sound and are not subject to the special rules on amplified sound, but are subject to general rules on disruption.
8. "Dean of Students" means the Dean of Students or any delegate or representative of the Dean of Students.
9. "Room or space" includes any room or space, indoors or outdoors, owned or controlled by the University.
10. "University" means The University of Texas at Dallas.
11. "day" means an 8:00 a.m. to 5:00 p.m. calendar day, and excludes weekends, University holidays, and days on which regularly scheduled classes are suspended due to emergency closure; “University holiday” means days identified in the holiday schedule published by the Office of Human Resources. If a deadline defined in this policy falls on a Saturday, Sunday, University holiday, or emergency closure, that deadline will be moved to the next business day.
12. "adviser" means a member of the university faculty or full-time staff who advises the members of an organization.
13. "Vice President for Student Affairs" means the Vice President for Student Affairs, their delegate, or their representative.
14. "University facility" means an auditorium, arena, residence hall, other building, room, public area, or any other area on the campus.
15. "University President" means the President of The University of Texas at Dallas, their delegate, or their representative.
16. “Limited public forum” means University property, both indoors and outdoors, that is not part of the common outdoor area. This includes the outside surfaces of a University building, surfaces associated with or connected to a University building, a University

Case 1:25-cv-01140-DA Document 1-4 Filed 09/18/25 Page 4 of 29

structure, spaces dedicated to temporary outdoor banners, spaces dedicated to temporary outdoor exhibits, residential outdoor spaces managed by University Housing (including the grounds around University Village), the Student Union Dining Hall Patio, the Student Union east awning, Dining Hall West outdoor area, Davison Gundy Alumni Center green space, and the courtyards of all academic buildings.

17. “Common outdoor area” means outdoor space that is not used solely for University business or an event, an educational function, or a research function on either a permanent or temporary basis. It does not include any space within the University’s limited public forum. Common outdoor areas are designated by state law as traditional public forums.
18. "Temporary banner space" means designated outdoor or indoor display area reserved for use by University persons and University organizations, as managed by the Dean of Students, where a University person or organization's temporary banner may be affixed for multiple days as permitted by Subsection 22. These areas are part of the University's limited public forum and not open to use by members of the public.
19. “Temporary exhibit space” means designated outdoor or indoor display areas reserved for use by University persons and University organizations, as managed by the Dean of Students, where a University person or organization may erect a temporary exhibit as permitted by Section G. These areas are part of the University’s limited public forum and not open to use by members of the public.
20. “Antisemitism” means a certain perception of Jews that may be expressed as hatred toward Jews. The term includes rhetorical and physical acts of antisemitism directed toward Jewish or non-Jewish individuals or their property or toward Jewish community institutions and religious facilities.

# Section B: Prohibited Expression

## Subsection 4: Obscenity

No person or organization shall distribute or display on the campus any writing or visual image, or engage in any public performance, that is obscene. A writing, image, or performance is "obscene" if it is obscene as defined in Texas Penal Code, Subsection 43.21 or successor provisions, and is within the constitutional definition of obscenity as set forth in decisions of the United States Supreme Court.

## Subsection 5: Defamation

1. No person shall make, distribute, or display on the campus any statement that unlawfully defames any other person.
2. A statement defames another person if it is: (i) published to a third party other than the subject of the statement or their legal representative; (ii) of and concerning that person; (iii) is a false statement of fact; (iv) that holds the person up to hatred, ridicule or contempt; (v) is made negligently, if the person is a private figure or, if the person is a public official or public figure, with knowledge of falsity or reckless disregard of the truth; (vi) which proximately causes damages; and (vii) is not privileged.

## Subsection 6: Incitement to Imminent Violations of Law

No person shall make, distribute, or display on the campus any statements directed to inciting or producing imminent violations of law under circumstances such that the statements are likely to actually and imminently incite or produce violations of law.

## Subsection 7: Harassment

1. No person will engage in conduct that constitutes harassment of another person or make, distribute, or display on the campus or through University information resources any statement that constitutes harassment of any other person. This Section applies to all speech regardless of where it occurs, including off University property, if it potentially affects a University person's education or employment with the University or potentially affects the University community, all speech made using University resources, including speech that is part of teaching, research, or other official functions of the University whether in person or not, and whether oral, written, or symbolic.
2. "Harassment" means hostile or threatening conduct or speech, whether oral, written, or symbolic, that:
    a. is not necessary to the expression of any idea described in Subsection 7.3 of this policy;
    b. is sufficiently severe, pervasive, and objectively offensive to create an objectively hostile or threatening environment that interferes with or diminishes the victim's ability to participate in or benefit from the services, activities, or privileges provided by the University; and
    c. personally describes or is personally directed to one or more specific individuals.
3. To make an argument for or against the substance of any political, religious, philosophical, ideological, or academic idea is not harassment, even if some listeners are

Case 1:25-cv-01140-DAE Document 1-30-4 Filed 09/03/25 Page 6 of 29

offended by the argument or idea. The categories of sexually harassing speech set forth in UTDBP3102 of the UT Dallas Handbook of Operating Procedures are rarely, if ever, necessary to argue for or against the substance of any political, religious, philosophical, ideological, or academic idea.

4. Verbal harassment may consist of threats, insults, epithets, ridicule, personal attacks, or the categories of harassing sexual speech set forth in UTDBP3102 and UTDBP3090 of the UT Dallas Handbook of Operating Procedures. Verbal harassment is often based on the victim's appearance, personal characteristics, or group membership, including but not limited to race, color, religion, national origin, gender, age, disability, citizenship, veteran status, sexual orientation, gender identity or gender expression, ideology, political views, or political affiliation.
5. Harassment can also consist of nonverbal conduct, such as hazing, practical jokes, damage to property, and physical assault. In the case of sexual harassment and sexual misconduct, sexual conduct is often central to the offense. These forms of harassment are prohibited by UTDSP5003 and UTDBP3102 of the UT Dallas Handbook of Operating Procedures, and by the Regents' Rules and Regulations, Rule 30105. To the extent of any conflict in the definition of verbal harassment, the more detailed definition in this section controls.
6. The harassment that this section prohibits does not exhaust the category of speech that is unnecessary and inappropriate to vigorous debate in a diverse community of educated people. An essential part of higher education is to learn to separate substantive argument from personal offense and to express even the deepest disagreements within standards of civility that reflect mutual respect, understanding, and sensitivity among the diverse population within the University and in the larger society. These are community norms, even though they cannot be enforced by disciplinary rules.
7. Verbal harassment has been interpreted very narrowly by the federal courts. Policies on verbal harassment or hate speech at many universities have been held unconstitutional, either because they prohibited harassment only when it was based on race, sex, and similar categories, or because they failed to protect the expression of potentially offensive ideas. This policy should be interpreted as narrowly as need be to preserve its constitutionality.
8. Members of the University community are strongly encouraged to report harassment.
    a. A student who believes he or she has been harassed should report the alleged violation to the Dean of Students.
    b. A faculty member or staff member who believes he or she has been harassed should report the alleged violation to Human Resources.
    c. Alternatively, any person who believes he or she has been harassed may report the alleged violation to the Office of Institutional Compliance, or to any University official, administrator, or supervisor. A faculty member is not an

Case 1:25-cv-01140-DII Document 1 Filed 09/02/25 Page 7 of 29

"official, administrator, or supervisor" for this purpose unless that faculty member holds an administrative position.

d. Any University official, administrator, or supervisor who receives a report of alleged harassment will promptly refer that report and the complaint to the Office of Institutional Compliance, Human Resources, or the Dean of Students as appropriate. A complainant whose report is not forwarded to the Office of Institutional Compliance, Human Resources or to the Dean of Students, has not initiated proceedings for providing a remedy to the complainant or for imposing discipline on the alleged harasser.

e. Investigation of the information provided, and any remedial or disciplinary proceedings, will advance under the procedures set out in the harassment policies cross-referenced in this section.

## Subsection 8: Solicitation & Commercial Speech

1. General rules.
    a. No University person, University organization, or member of the public shall make, distribute, or display on the campus any statement that offers or advertises any product or service for sale or lease, or requests any gift or contribution, except as authorized in this Subsection, by the Regents' Rules and Regulations, or by a contract.
    b. Words or symbols on personal apparel, or on decals or bumper stickers affixed to a vehicle by an owner of that vehicle, are not solicitation within this definition.
    c. Unadorned acknowledgments or thanks to donors are not solicitations within this definition.
2. Rules Specific to UT Dallas campus constituents:
    a. A registered student, faculty, or staff organization may advertise or sell merchandise, publications, food, or nonalcoholic beverages, or request contributions, for the benefit of the organization, for the benefit of another registered student, faculty, or staff organization, or for the benefit of an organization that is tax-exempt under Subsection 501 (c)(3) of the Internal Revenue Code. No organization may sell items obtained on consignment. No organization may request contributions for an off-campus tax-exempt organization for more than fourteen days in any fiscal year.
    b. Registered student, faculty, and staff organizations, and academic and administrative units, may sell, distribute, or display literature that contains advertising, subject to the limits in Section D. Individual students, faculty members, and staff members may distribute or display such literature, but may not sell it.

c. Individual students, faculty members, and staff members may post advertisements for roommates, subleases, and sales of used goods that the seller has personally owned and used, but only on a bulletin board designated for that purpose by an academic or administrative unit in space that the unit occupies or controls. Any unit that designates a bulletin board for this purpose may regulate that bulletin board under the procedures set forth by that unit.
d. A resident of a University residence hall or apartment building may occasionally invite one or more salespersons to come to the resident's room or apartment, and in that room or apartment, the salesperson may offer products or services for sale to other residents of that residence hall or apartment building.
e. As per Regents' Rules and Regulations (Rule 80103, 2.2.9), registered student, faculty, or staff organizations may collect admission fees for programs scheduled in advance.
f. A registered student, faculty, or staff organization may sell charitable raffle tickets on behalf of an organization that is authorized to conduct a charitable raffle under the Texas Charitable Raffle Enabling Act, Texas Occupations Code (Policy 2002), or successor provisions.

3. A registered student organization that receives funds from membership fees or solicitations under this Subsection shall deposit and account for such funds under the rules in the Student Organization Manual.
4. More detailed regulation of solicitation appears in Regents' Rules and Regulations (Rule 80103). The provisions most relevant to students, faculty, and staff have been incorporated in this policy.

## Subsection 9: Prohibited Items or Actions

The following restrictions are intended to protect the health and safety of all persons on campus, to maintain the free flow of pedestrian traffic in and out of University buildings, and to protect the educational mission of the University:

1. A mask, facial covering, or disguise that conceals the identity of the wearer that is calculated to obstruct the enforcement of these rules or the law, or to intimidate, hinder or interrupt a University official, UTDPD officer, or other person in the lawful performance of their duty.
2. The possession, use, or display of firearms, facsimile firearms, ammunition, explosives, or other items that could be used as weapons, including but not limited to sticks, poles, clubs, swords, shields, or rigid signs that can be used as a shield, without permission from the Dean of Students, unless authorized by federal, State or local laws.
3. Body-armor or makeshift body-armor, helmets and other garments, such as sporting

protective gear, that alone or in combination could be reasonably construed as worn for participation in potentially violent activities.

4. Open flame, unless approved in advance by UT Dallas Life Safety Manager or Dean of Students.
5. No person or organization may engage in expressive activity within a ten-foot clearance around points of entry and the perimeter of all University buildings.

## Section C: General Rules on Means of Expression

### Subsection 10: Disruption

1. Except as expressly authorized in Subsection 36 or by an authorized University official responsible for a program or event sponsored by an academic or administrative unit, no speech, expression, or assembly may be conducted in a way that disrupts or interferes with any:
    a. teaching, research, administration, or other authorized activities on the campus;
    b. free and unimpeded flow of pedestrian and vehicular traffic on the campus; or
    c. signs, tables, exhibits, public assemblies, distribution of literature, guest speakers, or use of amplified sound by another person or organization acting under the rules in this policy.
2. Scope.
    a. The term "disruption" and its variants, as used in this subsection, are distinct from and broader than the phrase "disruptive activities," as used in the Regents' Rules and Regulations (Rule 40502). This rule is concerned not only with deliberate disruption but also with scheduling and coordination of events to manage or minimize the inevitable conflicts between legitimate events conducted in close proximity and to preserve the University's ability to execute its functions.
    b. Except in the most extreme cases, interference and disruption are unavoidably contextual. Intentional physical interference with other persons is nearly always disruptive in any context. Interfering with traffic depends on the relation between the volume of traffic and the size of the passageway left open. Disruptive noise is the most contextual of all because it depends on the activity disrupted. Any distracting sound may disrupt a memorial service. Any sound sufficiently loud or persistent to make concentration difficult may disrupt a class or library. Occasional heckling in the speaker's pauses may not disrupt a political speech, but persistent heckling that prevents listeners from hearing the speaker does disrupt a political speech. These illustrations may be helpful, but none of

them includes enough context to be taken as a rule. We cannot escape relying on the judgment and fairness of University authorities in particular cases. In this context where difficult enforcement judgments are unavoidable, it is especially important to remind administrators and law enforcement officials that their judgments should not be influenced by the viewpoint of those claiming disruption or of those allegedly disrupting.

3. Potentially disruptive events can often proceed without disruption if participants, administrators, and law enforcement officials cooperate to avoid disruption without stopping the event. In cases of marginal or unintentional disruption, administrators and law enforcement officials should clearly state what they consider disruptive and seek voluntary compliance before stopping the event or resorting to disciplinary charges or arrest.

## Subsection 11: Damage to Property

1. No speech, expression, or assembly may be conducted in a way that damages or defaces property of the University or of any person who has not authorized the speaker to damage or deface their property.
2. No person may damage, deface, or interfere with any sign, table or exhibit posted or displayed by another person or organization acting under the rules in this policy.

## Subsection 12: Coercing Attention

1. No person may attempt to coerce, intimidate, or badger any other person into viewing, listening to, or accepting a copy of any communication.
2. No person may persist in requesting or demanding the attention of any other person after that other person has attempted to walk away or has clearly refused to attend to the speaker's communication.

## Subsection 13: Other Rules with Incidental Effects on Speech

1. Other generally applicable or narrowly localized rules, written and unwritten, incidentally limit the time, place, and manner of speech, but are too numerous to compile or cross-reference here. For example, libraries typically have highly restrictive rules concerning noise; laboratories and rooms containing the electrical and mechanical infrastructure of the University typically have safety rules and rules excluding persons without specific business there; fire and safety codes prohibit the obstruction of exits and limit the constriction of hallways. Speech within classrooms is generally confined to

the subject matter of the class; the right to attend a class at all is subject to registration and payment of tuition; individual professors may have rules of decorum in their classroom. These kinds of rules limit the right of students, faculty, and staff to enter and speak in the places to which these rules apply.

2. Reasonable and nondiscriminatory rules of this kind generally control over the rights of free speech guaranteed in this policy. But even these kinds of rules are subject to the constitutional right of free speech. Such rules must be viewpoint neutral. Such rules cannot regulate speech more restrictively than they regulate other activities that cause the problems to be avoided by the rule. Such rules should not restrict speech more than is reasonably necessary to serve their purpose. Such rules cannot ban unobtrusive forms of communication with no potential for disruption even in the specialized environment subject to the localized rule. Thus, for example, means of silent expression or protest confined to the speaker's immediate person, such as armbands, buttons, and t-shirts, are nearly always protected because they are rarely disruptive in any environment.
3. University persons, University organizations, and members of the public are responsible for maintaining a passageway for pedestrians that is adequate to the volume of pedestrian traffic passing through the area. Should the size of the assembly exceed the maximum number of participants that is safe for a given location, participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly.

# Section D: Distribution of Literature

## Subsection 14: General Rule on Distribution of Literature

1. Registered student, faculty, and staff organizations, and academic and administrative units, may sell, distribute, or display literature on campus subject to the rules in this policy. Individual students, faculty members, and staff members may distribute or display literature but may not sell it. In either case, no advance permission is required. Members of the public may distribute literature in the common outdoor areas, subject to the rules in this policy, but may not sell literature.
2. "Literature" means any printed material, including any newspaper, magazine, or other publication, and any leaflet, flyer, or other informational matter, that is produced in multiple copies for distribution to potential readers.

## Subsection 15: Not-for-profit Literature Only

1. Except as expressly authorized by the Regents' Rules and Regulations or by contract with the University, no person or organization may sell, distribute, or display on campus any publication operated for profit. A registered student, faculty, or staff organization may sell publications operated for profit as part of a fundraiser authorized by, and subject to the limits of Subsection 8.
2. A publication is operated for profit if any part of the net earnings of the publication, or if its distribution, inures to the benefit of any private shareholder or individual.

## Subsection 16: Limits on Advertising

1. Literature distributed on campus may contain the following advertising:
   a. advertising for a registered student, faculty, or staff organization, or an academic or administrative unit;
   b. advertising for an organization that is tax-exempt under Subsection 501 (c)(3) of the Internal Revenue Code;
   c. paid advertising in a publication primarily devoted to promoting the views of a not-for-profit organization or to other bona fide editorial content distinct from the paid advertising; and
   d. other advertising expressly authorized by the Regents' Rules and Regulations by contract with the University.
2. All other advertising in literature distributed on campus is prohibited.

## Subsection 17: Cleanup of Abandoned Literature

Any person or organization distributing literature on campus shall pick up all copies dropped on the ground in the area where the literature was distributed.

# Section E: Signs and Banners

## Subsection 18: General Rules on Signs

1. "Sign" means any method of displaying a visual message to others, except that transferring possession of a copy of the message is distribution of literature and not a sign.

2. Subject to the rules in this section and to the general rules in Sections B and C, a University person or organization may display a sign by holding or carrying it, by displaying it at a table (see Section F), or by posting it on a bulletin board or other designated location. Signs may not be staked to the ground or posted in any other location except those areas allowed by long-standing tradition or otherwise permitted by this policy.

## Subsection 19: Hand-held Signs

1. Students, faculty, and staff may display a sign on campus by holding or carrying it by hand or otherwise attaching it to their person. Members of the public may display a sign in the common outdoor areas by holding or carrying it by hand or otherwise attaching it to their person. No advance permission is required. Signs on sticks or poles or otherwise attached to any device are prohibited.
2. Hand-held signs constructed of materials that create a hazard to other people are not permitted. Signs constructed of rigid materials, including sticks, poles, wood, metal, hard plastic, or other materials that could be construed as a hazard are not permitted.
3. Any person holding or carrying a sign shall exercise due care to avoid bumping, hitting, or injuring any other person.
4. Any person holding or carrying a sign at a speech, performance, or other event shall exercise due care to avoid blocking the view of any other person observing the speech, performance, or event. Depending on the venue, this may mean that signs may be displayed only around the perimeter of a room or an audience.
5. A law enforcement officer, the Dean of Students, or an usher or any other university employee if authorized by officials responsible for managing the venue, may warn any person that their sign is being handled in violation of this section. If the violation persists after a clear warning, the law enforcement officer, dean, authorized usher, or other authorized employee may confiscate the sign or take other appropriate steps to respond to the violation. A law enforcement officer may take any action necessary to keep the peace including but not limited to issuing a criminal trespass warning to the violator.

## Subsection 20: Signs in Other Designated Locations (including on bulletin boards)

1. Each academic or administrative unit may authorize the posting of signs in spaces that a unit occupies and controls. Such authorization may be granted by general rule, by stamping or initialing individual signs, or by long-standing tradition.

2. Signs in spaces occupied by academic or administrative units may be:
    a. confined to bulletin boards or other designated locations;
    b. subjected to viewpoint-neutral rules limiting the size of signs, limiting how long they may be posted, requiring each sign to show the date it was posted and the name of the person or organization who posted it, and similar rules designed to facilitate fair and equal opportunities to post signs;
    c. confined to official statements or business of the unit, or to certain subject matters of interest within the unit, or to signs posted by persons or organizations affiliated with the unit.
3. Each academic or administrative unit will post on or near each bulletin board or other designated location that it administers:
    a. either the rules applicable to that bulletin board or location or a particular office or website where the rules applicable to that bulletin board or location may be found; and
    b. if a stamp or initials are required on signs before they are posted on that bulletin board or location, the name and office location of the person whose stamp or initials are required.
    c. This notice will be posted in the upper left corner of each bulletin board or other designated location for posting signs, or conspicuously in another nearby location. If no such notice is posted, then the only applicable rules are those contained in Section B and Subsections 10, 11, and 14.
4. Within the scope of the subject matters permitted on a particular bulletin board or other designated location, no academic or administrative unit will discriminate on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed on a sign.
5. This Section does not apply to any enclosed bulletin board or display case that is accessible only to authorized personnel for official University business.

## Subsection 21: Banners

"Banner" means an affixed, stationary sign hung from a structure or building, or between two buildings, structures, or poles. Banners on poles may not be carried by individuals.

1. Hand-held banners. University persons, University organizations, and members of the public are permitted to display a hand-held banner carried by two or more individuals without poles, in accordance with Subsection 20, in the common outdoor areas.
2. Temporary banner space designations.
    a. The Dean of Students shall designate places where banners may be hung in indoor and outdoor locations not occupied or controlled by any other academic

Case 1:25-cv-01141-DAE Document 1-30-4 Filed 09/22/25 Page 15 of 29

or administrative unit. Temporary banner spaces are not open to the public.
    b. Other academic and administrative units may designate one or more temporary banner spaces where banners may be hung in indoor or outdoor locations that the unit occupies or controls. These temporary banner spaces are not open to members of the public.
3. Academic and administrative units and registered student, faculty, and staff organizations may hang banners in locations designated under Subsection 22, 2(2). Individuals and members of the public may not hang banners.
4. Advance permission is required for the hanging of banners. Each banner may be hung for one week. The banner may be renewed from week to week if space is available, but usually, other organizations are waiting their turn and renewal is not possible.
5. The Dean of Students may require that the physical work of hanging the banners be performed only by employees of Facilities Management or other appropriate University personnel. Actual costs will be charged to the organization or unit making the request.

# Section F: Tables

## Subsection 22: General Rule on Tables

University persons and University organizations may set up tables from which to display literature, disseminate information and opinions, and raise funds, subject to the rules in this section and to the general rules in Sections B and C. No advance permission is required. Members of the public may also set up tables in common outdoor areas.

## Subsection 23: Locations

1. Subject to the restrictions in this section and subject to the rules on disruption of other functions and interference with vehicular and pedestrian traffic, University persons and University organizations may set up tables in any outdoor location on the campus and in any large, open, indoor location.
2. Additional Restrictions.
    a. Tables may not be set up inside any library, classroom, laboratory, performance hall, stadium, or office, or in any hallway less than ten feet wide, without permission from the academic or administrative unit that controls the space, or from the faculty member or staff member who controls the space at a particular time.
    b. An academic or administrative unit may further specify these rules by restricting

tables to reasonable locations in spaces occupied by that unit. Academic and administrative units are encouraged to clearly state any such rules in writing and to publish those rules on a website or on a flyer or pamphlet available at the chief administrative office of the unit.

3. If any table is set up in a prohibited or disruptive location, any University employee pointing out the violation shall also point out other locations, as nearby as is reasonably possible, where the table is permitted.

### Subsection 24: Identification

Each table must have a sign or literature that identifies the University person or University organization sponsoring the table.

### Subsection 25: Clean-up Around Tables

Any person or organization sponsoring a table shall remove litter from the area around the table before vacating the space.

### Subsection 26: Sources of Tables

University persons and University organizations may supply their own tables. In addition, the Dean of Students maintains a supply of tables for registered student organizations that may be reserved and checked out for use in the Student Union Building and on-campus in designated areas.

## Section G: General Exhibits and A-frame Exhibits

### Subsection 27: General Rules on Exhibits

1. "General Exhibit" means an object or collection of related objects, designed to stand on the ground or on a raised surface, that is not a table, and that is designed for temporary display not permanently attached to the ground.
2. “A-Frame Exhibit” means a movable and self-supported signboard designed to stand on the ground in a temporary outdoor exhibit space. A-frame exhibits may not exceed five feet in height or width. Structures that do not meet these criteria will be considered general exhibits and will be subject to the rules in Subsection 31.1.

Case 1:25-cv-01141-DAE Document 1-30 Filed 07/22/25 Page 17 of 29

3. Academic or administrative units and registered student organizations, faculty organizations or staff organizations may erect exhibits, subject to the rules in this section and to the general rules in Sections B and C. Advance permission is required from the Dean of Students, except that an academic unit may authorize indoor exhibits in a space that it occupies and controls. Members of the public may not erect exhibits.
4. The Dean of Students will maintain on a website, a current description of the rules and procedures for displaying a temporary outdoor exhibit space for A-frame exhibits on campus.

## Subsection 28: Application Process

An academic or administrative unit or a registered student, sponsored student, faculty, or staff organization desiring to display an outdoor general exhibit will apply on a form prescribed by the Dean of Students. An academic or administrative unit or a registered student, sponsored student, faculty, or staff organization desiring to display an outdoor A-frame exhibit must follow guidelines outlined on the Dean of Students 'General Exhibits and A-frame Exhibits' website.

## Subsection 29: Criteria for Approval

1. General exhibits.
    a. The Dean of Students will designate temporary outdoor exhibit spaces where general exhibits may be placed. The Dean of Students will authorize a general exhibit described in a completed application under Subsection 29 unless the Dean of Students finds that use of the proposed temporary outdoor exhibit space for the proposed exhibit must be disapproved under the criteria in UTDSP5002. The Dean of Students will advise the applicant on how to correct, if possible, any conditions that preclude approval of the application.
    b. The Dean of Students will consider the totality of the circumstances, including safety concerns, as part of the approval process.
2. A-frame exhibits.
    a. The Dean of Students will designate temporary outdoor exhibit spaces where A-frame exhibits may be placed. If an academic or administrative unit or a registered student, faculty, or staff organization wishes to place an A-frame exhibit in a different location, then the structure will be considered a general exhibit under this Subsection. The Dean of Students may limit the number of A-frame exhibits that are placed in designated areas to minimize visual obstructions of the A-frames.

## Subsection 30: Time Limits

1. General exhibits.
    a. In locations administered by the Dean of Students, each exhibit may be displayed for seven days. The exhibit may be renewed for an additional seven days if space is available.
    b. The exhibit may be displayed no earlier than 8:00 a.m. and must be removed by 10:00 p.m. each day and may be re-erected each morning. However, the Dean of Students may authorize overnight exhibits in designated locations on a case-by-case basis.
2. A-frame exhibits.
    a. Each A-frame exhibit may be placed for seven days and remain overnight. The A-frame exhibit may be renewed for an additional seven days if space is available.
    b. If the A-frame is left on campus for longer than the reservation, the A-frame may be removed by the Department of Facilities Management, at the expense of the academic or administrative unit or registered student, faculty, or staff organization.

## Subsection 31: Clean-up Around and Upkeep of Exhibits

Any person or organization sponsoring an exhibit shall remove litter from the area around the exhibit before vacating the space. A-frame exhibits are expected to be maintained in a manner that they are in working order and with material that is not out of date.

## Subsection 32: Liability

Any person or organization sponsoring an exhibit assumes full responsibility for the exhibit, including all injuries or hazards that may arise from the exhibit. The University shall not be liable for any damage that may occur to the exhibit, and any person or organization sponsoring the exhibit shall indemnify the University for any claims arising from the exhibit's presence on campus.

# Section H: Amplified Sound

## Subsection 33: General Rules on Amplified Sound

University persons, University organizations, and members of the public may use amplified sound on campus at designated times and locations, subject to the rules in this section and to the general rules in Sections B and C. This section creates limited exceptions to the general rule on disruption in Section C.

## Subsection 34: Location and Times of Amplified Sound Areas

1. Student Union Mall
    a. The Margaret McDermott Student Union Mall Amplified Sound Area is bounded by the Student Union Building on the west side and extends to the stone wall between the Student Union and the McDermott Library on the east side. The north boundary is marked by the north end of the mall pavers and the south boundary is the end of the pavement on the south side of the outdoor Chess Plaza.
    b. With appropriate approval, University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. Monday through Friday, and 8:00 a.m. to 5 p.m. on Saturdays and Sundays.
    c. All academic and administrative units, as well as, registered and sponsored student organizations, and faculty and staff organizations may use sound equipment owned or controlled by the dean of students' office for this sound area.
    d. Members of the public must use their own sound equipment. This sound area requires a reduced decibel level as compared to other sound areas to ensure educational activity in close proximity is not disturbed.
2. The PUB Patio
    a. The PUB Patio Amplified Sound Area is bounded by the railed fence on the north end of the Patio and to the east, west, and south by the existing surrounding walls of the Union building.
    b. With appropriate approval, University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. Monday through Friday, and 8:00 a.m. to 5 p.m. on Saturdays and Sundays.
    c. All academic and administrative units, as well as, registered and sponsored

student organizations, and faculty and staff organizations may use sound equipment owned or controlled by the dean of students' office for this sound area.

d. Members of the public must use their own sound equipment. This sound area requires a reduced decibel level as compared to other sound areas to ensure educational activity in close proximity is not disturbed.

3. Student Union Green Space
    a. The Student Union Green Space is bounded by the edges of the grass on the north, south, east, and west sides.
    b. With appropriate approval, University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. Monday through Friday, and 8:00 a.m. to 5 p.m. on Saturdays and Sundays.
    c. All academic and administrative units, as well as, registered and sponsored student organizations, and faculty and staff organizations may use sound equipment owned or controlled by the dean of students' office for this sound area.
    d. Members of the public must use their own sound equipment. This sound area requires a reduced decibel level as compared to other sound areas to ensure educational activity in close proximity is not disturbed.
4. With advance permission from the director of the Student Union, University persons and University organizations may be authorized to use amplified sound in the amplified sound areas after 5:00 p.m. weekdays and Saturdays and Sundays, not to exceed 1:00 a.m. the next day. The Student Union Director will decide what a reasonable start/end time should be, based on information relating to other campus events and classroom activities occurring on the day of the request. University groups using Student Union amplified sound equipment will yield equipment when the facility closes.
5. The Vice President for Student Affairs may designate additional areas for use of amplified sound.
6. If the director of the Student Union concludes that it is unworkable to use amplified sound in more than one of the amplified sound areas at the same time, the director may deny requests to use amplified sound.

## Subsection 35: Regulation and Scheduling of Amplified Sound

1. The director of the Student Union may prescribe rules concerning scheduling, sound levels, the location of speakers and direction in which they are pointed, and other rules to facilitate the use of amplified sound areas, to mediate any conflict with University functions and other nearby activities, and to manage environmental impact. All such

rules shall be reasonable and nondiscriminatory.

2. Reservations.
    a. University persons, University organizations, and members of the public wishing to use an amplified sound area may reserve a particular area at a particular time. Reservations by University persons and University organizations must be made with the director of the Student Union through the online request form located on the Student Union website. Members of the public may make a reservation by emailing reservations@utdallas.edu. If space is available, the director of the Student Union shall approve a properly completed request, unless the application must be disapproved under the criteria in UTDSP5002 or under rules promulgated by the director under the authority of this section.
    b. The director of the Student Union shall advise each applicant on how to correct, if possible, any conditions that preclude approval of its application. The director of the Student Union may give advice to applicants of approved applications about other possible locations for an event, or about modifications to the proposed event, that would avoid potential problems or make the proposed event more workable.
    c. The director of the Student Union may limit the number or frequency of reservations for each applicant to ensure reasonable access for all persons and organizations desiring to use amplified sound.
3. When amplified sound areas are not reserved for use for an assembly including amplified sound, they are available for use, for permitted expressive activity, without reservation as part of the common outdoor areas. Any person or organization using or occupying the space without a reservation must yield control of the space in time to permit any user with a reservation to begin using the space promptly at the beginning of its reserved time. Equipment will not be provided to University persons and University organizations who do not have a prior reservation. With or without a reservation, members of the public must use their own equipment and comply with decibel level requirements.
4. Persons and organizations using amplified sound are responsible for maintaining a passageway for pedestrians that is adequate to the volume of pedestrian traffic passing through the area.
5. Any designations of additional areas, any additional rules regulating the designated areas, and the rules and procedures for reserving the right to use a designated area, shall be clearly stated on a website maintained by the director of the Student Union.

## Subsection 36: Amplified Sound Indoors

University persons and University organizations may use amplified sound indoors. Amplified

sound sufficient to be heard throughout the room may be used in any room in any building, but the director of the Student Union may limit or prohibit sound that would be disruptive outside the room. Reservations may be required. Rules concerning use of University buildings are contained in UTDSP5002.

# Section I: Public Assemblies

## Subsection 37: General Rules on Public Assemblies

1. "Publicly assemble" and "public assembly" include any gatherings of persons, including discussions, rallies, and demonstrations. The rules of Section H apply to any use of amplified sound at a public assembly.
2. Persons and organizations may publicly assemble on campus in any place where, at the time of the assembly, the persons assembling are permitted to be. This right to assemble is subject to the rules in this policy, and to the rules on use of University property in UTDSP5002. No advance permission is required in the common outdoor areas.

## Subsection 38: Reservation of Space

1. Common outdoor areas reservations.
   a. University persons, University organizations, and members of the public may reserve a space to assemble in the common outdoor areas, as defined by this policy. This is in addition to the amplified sound areas which are also available for reservation.
   b. Reservations by University persons and University organizations must be made with the director of the Student Union through the online request form on the Student Union website. Members of the public may reserve space by making a request to reservations@utdallas.edu. Applications and requests for a reservation for such assemblies will be approved pursuant to UTDSP5002.
   c. If the expected attendance at an assembly is twenty-five or more people, advance notice of no less than three days is recommended. Persons and organizations are encouraged to seek reservation of a space that is suited to their assembly's anticipated size.
2. Limited public forum areas reservations.
   a. Registered student, faculty, or staff organizations and academic or administrative units may reserve a space to assemble in the limited public forum areas, as defined by this policy.

   b. The director of the Student Union or other campus units, depending on the space, will receive applications for reservations of a space within the limited public forum areas. Applications for a reservation for such assemblies will be processed under the provisions in UTDSP5002.
   c. If the expected attendance at an event with a guest speaker is twenty-five or more people, advance notice of no less than three days is required.
3. An organization with a reservation has the right to the reserved room or space for the time covered by the reservation. Any person or organization using or occupying the room or space without a reservation must yield control of the room or space in time to permit any organization with a reservation to begin using the room or space promptly at the beginning of its reserved time.
4. While reservations are not required, they are strongly encouraged. A person or organization planning to use a room or space without a reservation may find the facility locked or in use by another person or organization.
5. Should the size of any assembly exceed the maximum number of participants that is safe for a given location, including a reserved space, assembly participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly to the extent relocation is practicable.

## Subsection 39: Notice and Consultation

1. Persons or organizations may publicly assemble on campus in any place where, at the time of the assembly, the persons assembling are permitted to be.
2. Persons or organizations that are planning a public assembly in a common outdoor area, with or without a guest speaker, and with more than fifty expected participants, including potential counter-demonstrators, are strongly encouraged to provide advanced notice of no less than one week to the director of the Student Union to help the University improve the safety and success of the expressive activity. Members of the public may provide this notice by emailing reservations@utdallas.edu. If there is uncertainty about applicable University rules, the appropriateness of the planned location, or possible conflict with other events, persons and organizations are encouraged to consult the Dean of Students and director of the Student Union. Should the size of the assembly exceed the maximum number of participants that is safe for a given location, participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly to the extent relocation is practicable.
3. University organizations planning an event in the limited public forum areas with or without a guest speaker and expected attendance of more than twenty-five participants are required to provide advanced notice of no less than three days to the Dean of Students, per the regulations outlined in the Student Organization Manual, to improve

the safety and success of the expressive activity. University persons and University organizations are encouraged to consult with the Dean of Students and director of the Student Union if there is uncertainty about applicable University rules, the appropriateness of the planned location, or possible conflict with other events. The dean has much experience in helping student organizations structure events in ways that both comply with the University's rules and achieve the organization's goals for the event. The dean can help identify appropriate space and potentially conflicting events. The dean can help the planners avoid unintended disruption or other violations that may result in subsequent discipline or subsequent interference with the assembly by campus authorities.

4. The notice and consultation requirements of this section do not apply to academic or administrative units.
5. University organizations notice and consultation requirements of this section may be waived by the Dean of Students.
6. Registered student, faculty, and staff organizations are afforded privileges not available to individual faculty, staff, and students. Individuals may not reserve indoor space on campus.

# Section J: Guest Speakers

## Subsection 40: Definitions

"Guest speaker" means a speaker or performer who is not a student, faculty member, or staff member.

## Subsection 41: Who May Present

1. Subject to the rules in this policy, University persons, University organizations, and members of the public may present guest speakers in common outdoor areas.
2. Registered student, faculty, and staff organizations and academic and administrative units may present guest speakers in the limited public forums of the campus. In the case of registered student organizations and sponsored student organizations, advance permission from the Dean of Students, as outlined in the Student Organization Handbook is required. Registered faculty organizations are required to seek advance permission from the Vice President for Academic Affairs and Provost. Registered staff organizations are required to seek advance permission from the Vice President and Chief of Staff. Individuals may not present a guest speaker in University buildings or

University facilities.

## Subsection 42: Location and Form of Presentation

1. Subject to the rules in this policy, including the applicable time, place, and manner rules, University persons, University organizations, and members of the public may utilize the common outdoor areas for guest speaker assemblies. No reservation or prior approval is necessary, but notice and reservations are encouraged.
2. A guest speaker may present a speech or performance, or lead a discussion, at a time announced in advance, in a limited public forum following guidelines and reservation requirements set forth in this policy.
    a. A guest speaker may distribute literature indoors only immediately before, during, or after the normal course of their speech, performance, or discussion to persons in attendance. Only literature that complies with Section D of this policy may be distributed.
3. A guest speaker may not:
    a. accost potential listeners who have not chosen to attend the speech, performance, or discussion; or
    b. distribute literature to persons who have not chosen to attend the speech, performance, or discussion; or
    c. help staff a table or exhibit unless it is set up in a common outdoor area.

## Subsection 43 Application

1. A registered student organization that has received approval of the dean to host a guest speaker in a limited public forum area must complete the reservation of space form on the Student Union website.
2. The dean shall approve an application properly made under Section I of this policy unless it must be disapproved under the criteria in UTDSP5002.

## Subsection 44: Obligations of Presenting Organization

A student, faculty or staff organization that presents a guest speaker must make clear that:

1. the organization, and not the University, invited the speaker; and
2. the views expressed by the speaker are their own and do not necessarily represent the views of the University, the University of Texas System, or any component institution.

# Section K: Responding to Speech, Expression, and Assembly

## Subsection 46: General Rule on Responding

Persons and organizations may respond to the speech, expression, or assembly of others, subject to all the rules in this policy.

## Subsection 47: Applications

1. Responders may not damage or deface signs or exhibits, disrupt public assemblies, block the view of participants, or prevent speakers from being heard.
2. Means of response that are permitted in many locations and without advance permission or reservation, such as signs, distribution of literature, and public assembly without amplified sound, may be used immediately and in any location authorized in this policy.
3. Means of response that require advance permission or reservation, such as banners, general exhibits, A-frame exhibits, and amplified sound, may be used as soon as the needed permission or reservation may be arranged. Banner space and some amplified sound areas may be unavailable on short notice because of earlier reservations, but the Dean of Students shall expedite approval of general exhibits, A-frame exhibits, available banner space, and amplified sound areas where necessary to permit appropriate response to other speech, assembly, or expression.
4. Means of response that are confined to authorized locations, such as banners, exhibits, and amplified sound, may be used only in those locations. It is not possible to respond to amplified sound with amplified sound in the same location; similarly, if an exhibit or public assembly is in a location where amplified sound is not permitted, it is not possible to respond with amplified sound in that location. In either case, it is possible to respond with amplified sound in another location and to use signs or distribution of literature to advertise the response at the other location.

# Section L: Enforcement and Appeals

## Subsection 48: Police Protection

1. It is the responsibility of the University to make its best effort to protect the safety of all persons on campus and to provide police protection for speakers, public assemblies,

persons staffing or viewing exhibits, and other events. The normal patrolling of officers in regular duty areas that fall in the area of such events will be at the cost of the University. When the magnitude, timing, or nature of an event in a University building, University facility, or other areas of the University's limited public forum requires overtime hours from police officers (including contract hours for officers hired from other departments or private security agencies), the University will, to the extent specified in paragraphs 2 and 3 below, charge the cost of overtime or contract officers to the person or organization sponsoring the event or exhibit. The purpose is to charge for police overtime when reasonably necessary, but not to charge for police overtime made necessary by the content of speech at the event or by the controversy associated with any event.

2. A reasonable and nondiscriminatory fee for overtime police work will be charged to the registered student, faculty, or staff organization for events in a University building, University facility, or other areas of the University's limited public forum for events that require overtime police protection, and
    a. charge a price for admission, or
    b. have a paid speaker, band, or other off-campus person or organization for services at the event.
3. The University shall have the sole power to decide, after reasonable consultation with the person or organization planning the event, whether and to what extent overtime police protection is required. No additional fee shall be charged for officers assigned because of political, religious, philosophical, ideological, or academic controversy anticipated or actually experienced at the event. All fees shall be based on the number of officers required for an uncontroversial event of the same size and kind, in the same place and at the same time of day, handling the same amount of cash.
4. Nothing in this Subsection applies to any interdepartmental charge or transfer among units or accounts funded by the University.

## Subsection 49: Response to Violations

1. Students wishing to make a grievance regarding a violation of Texas Education Code § 51.9315 may report it via the University Compliance and Ethics hotline by calling 1-888-228-7707.
2. A student or registered/sponsored student organization who violates a prohibition in this policy may be disciplined under the procedures in UTDSP5003.
3. A faculty member who violates a prohibition in this policy may be disciplined under applicable procedures provided by other rules. If no such procedures exist, violations by faculty members shall be referred to the Office of the Vice President for Academic Affairs and Provost.

4. A staff member who violates a prohibition in this policy may be disciplined under applicable procedures provided by other rules. If no such procedures exist, violations by staff members shall be referred to the staff member's supervisor.
5. Authorized University personnel may prevent imminently threatened violations, or end ongoing violations, of a prohibition in this policy, by explanation and by persuasion, by reasonable physical intervention, by arrest of violators, or by any other lawful measures. Alternatively, or additionally, they may initiate disciplinary proceedings under paragraphs 2, 3, or 4 of this subsection. Discretion regarding the means and necessity of enforcement shall be vested in the Chief of Police, or in University personnel designated by the President, as appropriate, but such discretion shall be exercised without regard to the viewpoint of any speaker.
6. A University person or University organization on the campus shall comply with instructions from University administrators and law enforcement officials at the scene. A University person or University organization that complies with an on-the-scene order limiting speech, expression, or assembly may test the propriety of that order in an appeal under Subsection 50.
7. Off-campus person(s) or organization(s) on the campus who violate a prohibition in this policy may be subject to criminal trespass charges, arrest, or other lawful measures.
8. Any incitement of violence, incitement of imminent violation of law, harassment, property damage, disruption of a university activity, or any other violation of state or federal law or university policy that was committed because of antisemitism or the offender's bias or prejudice against a group identified by race, color, disability, religion, national origin or ancestry, age, gender, or sexual preference will be subject to discipline, up to and including possible termination/expulsion.
9. Any registered student group that engages in incitement of violence, incitement of imminent violation of law, harassment, property damage, disruption of a university activity, or any other violation of state or federal law or university policy because of antisemitism or bias or prejudice against a group identified by race, color, disability, religion, national origin or ancestry, age, gender, or sexual preference, is subject to discipline, up to and including possible loss of recognized status for the registered student group.

## Subsection 50: Appeals

1. A University person or University organization that is denied permission for an activity requiring advance permission under this policy may appeal the denial of permission.
2. A University person or University organization that complies with an on-the-scene order limiting speech, expression, or assembly may, on or before the fifth weekday after complying with the order, file an appeal to determine the propriety of the order limiting

the speech, expression, or assembly. The question on appeal shall be whether, under the circumstances as they reasonably appeared at the time of the order, the appellant's speech, expression, or assembly should have been permitted to continue. Such an appeal may be useful to clarify the meaning of a rule, or to resolve a factual dispute that may recur if the appellant desires to resume the speech, expression, or assembly that was limited by the order.

3. An appeal authorized by this Subsection shall be heard under the procedures set out in UTDSP5002.

## RESPONSIBLE PARTY

- -

## LAST REVIEWED

- -

## HISTORY

- Issued: 2004-09-13
- Revised: 2012-10-31
- Editorial Amendments: 2013-06-12
- Revised: 2020-05-11
- Editorial Amendments: 2024-06-10
- Revised: 2024-06-21