# CHAPTER 13. SPEECH, EXPRESSION, AND ASSEMBLY

## On This Page


- Subchapter 13–200. Prohibited Expression
- Subchapter 13–300. General Rules on Means of Expression
- Subchapter 13–400. Distribution of Literature
- Subchapter 13–500. Signs, Banners, and A-Frames
- Subchapter 13–600. Tables
- Subchapter 13–700. Exhibits
- Subchapter 13–800. Amplified Sound
- Subchapter 13–900. Public Assemblies
- Subchapter 13–1000. Guest Speakers
- Subchapter 13–1100. Responding to Speech, Expression, and Assembly
- Subchapter 13–1200. Enforcement and Appeals


## Subchapter 13–100. Governing Principles

### Sec. 13–101. Freedom of Speech, Expression, and Assembly

a. The freedoms of speech, expression, and assembly are fundamental rights of all persons and are central to the mission of the University. In accordance with this Chapter, students, faculty members, staff members, and members of the public have the right to assemble, to speak, and to attempt to attract the attention of others, and corresponding rights to hear the speech of others when they choose to listen, and to ignore the speech of others when they choose not to listen. Generally, University events and programming, and events at University spaces leased or managed by other parties, are outside the scope of this Chapter and are not considered expressive activity. These events and activities may be implemented as approved by the appropriate vice president or under the applicable contractual terms.
b. In furtherance of the University's educational mission, the University buildings including their outside surfaces, surfaces associated with or connected to a University building, and a University structures are limited public forums open only to the expressive activities of faculty, staff, and students as set forth in this Chapter. Members of the public may engage in expressive activities at the University in accordance with the rules contained in this Chapter, including generally applicable or localized "time, place, and manner" rules as described in Subsection 13-304. Student, faculty, and staff organizations may not invite the public at large to events in University buildings, or facilities, or locations that are not a Common Outdoor Area.
c. Students, faculty and staff members are free to express their views, individually or in organized groups, orally or in writing or by other symbols, on any topic, in all parts of the campus as permitted by law, and subject to the applicable University rules and policies. Teaching, research, and other official functions of the University will have priority in allocating the use of space on campus. Members of the public may engage in expressive activities only in Common Outdoor Areas. The University's the time, place, and manner rules in this Chapter apply to individuals and groups engaging in expressive activity and are necessary to preserve the University's efficient and effective operations and functions.
d. The University will not discriminate on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed by any person, either in the enforcement and administration of these rules or otherwise. This subsection does not limit the University's ability to enforce provisions involving prohibited categories of expression described in Subchapter 13–200.
e. The University of Texas at Austin Police Department (UTPD) and any other peace officer with lawful jurisdiction may immediately enforce these rules if a violation of these rules constitutes a breach of the peace, compromises public safety, or violates the law. They may also assist dean of students staff or other University officials, as appropriate, when individuals refuse to follow University rules.

### Sec. 13–102. Scope of This Chapter and Related Provisions

a. This Chapter protects and regulates on-campus speech, expression, and assembly of students, faculty members, staff members, and members of the public, regardless of whether those activities are part of the teaching, research, or other official functions of the University or whether they are sponsored by the University or any academic or administrative unit.
    1. This Chapter also regulates certain speech that is part of the teaching, research, or other official functions of the University.
    2. Section 13–204 on harassment applies to all speech on campus, to speech made using University resources, and to off-campus speech that materially interferes with a person's education or employment.
b. This Chapter applies to speech and expressive activity by University persons, University organizations, and members of the public whether conducted in the Common Outdoor Areas or the Limited Public Forums. It also applies to speech made using university information resources as defined in University policies, regardless of whether the speech was submitted for academic credit. The Dean of Students administers and schedules reservations for the use of the temporary exhibit and banner spaces the use of University tables and the use of amplified sound because scheduling through a single office is necessary to avoid conflicts.
c. Any program or event sponsored by an academic or administrative unit of the University will have priority in the use of space and facilities over any speech, expression, or assembly that is not sponsored by an academic or administrative unit, except that programs or events sponsored by an academic or administrative unit will not have priority in the use of weekday amplified sound areas defined in Section 13–802. This Chapter does not limit other existing authority of University officials to authorize programs and events sponsored by the University or an academic or administrative unit and not provided for in this Chapter.
d. Additional rules concerning free speech and academic freedom of faculty members are found in the Regents' *Rules and Regulations*, Rule 31004, Paragraph 2, Sections 1 and 2.
e. Additional rules concerning free speech at the University are found in the Regents' *Rules and Regulations*, Rule 40501, Rule 80101, Rule 80103, and Rule 80104. Chapter 13 of the *Institutional Rules* implements those provisions and applies them to UT

Austin.

f. Rules requiring University employees to make clear that controversial statements are made in their personal capacity are found in the Regents' *Rules and Regulations*, Rule 10101, Section 6.2. Rules restricting use of University equipment, supplies, services, and working hours for political activities are found in the Regents' *Rules and Regulations*, Rule 30103.
g. If a deadline stated in this Chapter falls on a Saturday, Sunday, University holiday, or skeleton crew day, that deadline will be moved to the next day that is not a Saturday, Sunday, University holiday, or skeleton crew day.

### Sec 13–103. General Definitions—Categories of Speakers and Users

In this Chapter, unless the context requires a different meaning, the following definitions apply.

1. "Academic or administrative unit" means any office or department of the University.
2. "Event" means something that occurs in a certain place during a particular interval of time. Events include but are not limited to presentations by guest speakers, public assemblies, and other speech activities, which may include the distribution of literature or the use of exhibits, tables, or signs.
3. "Faculty member and staff member" includes any person who is employed by the University.
4. "Off-campus person or organization" and "member of the public" mean any person, organization, or business that is not an academic or administrative unit, a registered student, faculty, or staff organization, or a student, faculty member, or staff member.
5. "Registered faculty or staff organization" means a faculty organization or staff organization under the Regents' *Rules and Regulations*, Rule 40201 and Handbook of Operating Procedures 4-1110 that has completed the University's registration process in Handbook of Operating Procesures 4-1110.
6. "Registered or sponsored student organization" means a registered student organization or a sponsored student organization under Subchapter 6–200 of the *Institutional Rules*.
7. "Student" means a person who is currently enrolled at the University, or has been enrolled at the University in a prior semester or summer session and is eligible to continue enrollment in the semester or summer session that immediately follows.
8. "University person or organization" includes academic or administrative units, registered or sponsored student organizations, registered faculty or staff organizations, and individual students, faculty members, and staff members.

### Sec. 13–104. Other General Definitions

In this Chapter, unless the context requires a different meaning, the following definitions apply.

1. "Amplified Sound" means sound whose volume is increased by any electric, electronic, mechanical, or motor-powered means. Shouting, group chanting, and acoustic musical instruments are exempt from this definition and are not subject to the special rules on amplified sound, but are subject to general rules on disruption.
2. "Common Outdoor Area" means outdoor space that is not regularly used for dedicated University business and does not have an educational function or a research function. It does not include the outside surfaces of a University building, surfaces associated with or connected to a University building, a University structure, spaces dedicated to temporary outdoor banners, spaces dedicated to temporary outdoor exhibits, or any other space within the University's limited public forum. Common outdoor areas are designated by state law as traditional public forums.
3. "Dean of Students" means the Dean of Students of The University of Texas at Austin or any delegate or representative of the Dean of Students.
4. "Limited Public Forum" means the University property, both indoors and outdoors, that is not a common outdoor area. This includes the outside surfaces of a University building, surfaces associated with or connected to a University building, a University structure, spaces dedicated to temporary outdoor banners, spaces dedicated to temporary outdoor exhibits, and residential outdoor spaces managed by University Housing and Dining, including Jester Spanish Oaks Terrace, San Jacinto Amphitheatre, Honors Quad, Duren Courtyard, the Blanton Museum's outdoor Plaza and Art Garden, the Union Building Patios, the William C. Powers Jr. Student Activity Center patios, Goldsmith Hall, the pedestrian bridge adjoining the Graduate School of Business, Moody Pedestrian Bridge, and the Cronkite Plaza.
5. "Main Mall" means the area bounded by the south wall of the Main Building, the west walls of Garrison Hall, the north edge of Inner Campus Drive, the south wall of the Dorothy L. Gebauer Building and the east wall of Battle Hall. The Main Mall includes the south steps and south porches of the Main Building.
6. "Room or Space" includes any Room or Space, indoors or outdoors, owned or controlled by the University.
7. "Temporary Banner Space" means designated outdoor or indoor display area reserved for University persons and University organizations' use, as managed by the Dean of Students, where a University person or organization's temporary banner may be affixed for multiple days as permitted by Subsection 13–503. These areas are part of the University's limited public forum and not open to members of the public.
8. "Temporary Exhibit Space" means an outdoor display area, designated and managed by the Dean of Students, where an authorized person or organization may erect a temporary exhibit as permitted by Subsection 13–503. These areas are part of the University's limited public forum and not open to members of the public.
9. "University" means The University of Texas at Austin.
10. "Vice President" means the Vice President for Student Affairs at The University of Texas at Austin.

### Sec. 13-105. Prohibited Items or Actions

The following restrictions apply to a person's expressive activities and are intended to protect the health and safety of all persons on campus, to maintain the free flow of pedestrian traffic in and out of University buildings, and to protect the educational mission of the University.

a. The following items are prohibited on campus:
    i. A mask, facial covering, or disguise that conceals the identity of the wearer that is calculated to obstruct the enforcement of these rules or the law, or to intimidate others, or hinder or interrupt a University official, UTPD officer, or other person in the lawful performance of their duty;
    ii. The possession, use, or display of firearms, facsimile firearms, ammunition, explosives, or other items that could be used as weapons, as determined by University staff, including but not limited to sticks, poles, clubs, swords, shields, or rigid signs that can be used as shields, without prior written permission from the Dean of Students, unless authorized by federal, state or local laws;
    iii. Body armor or makeshift body armor, helmets and other garments, such as sporting protective gear, that alone or in combination could be reasonably construed as weapons or body armor, without prior written permission from the Dean of Students; and
    iv. Open flame, unless approved in advance by The University of Texas at Austin Fire Marshal with notice of that approval provided in advance to the Dean of Students.

No person or organization may engage in expressive activity within a ten-foot clearance around points of entry and the perimeter of all University buildings. In some instances, as determined by University staff and based on specific circumstances, a greater perimeter may be required to prevent disruption to events occurring inside buildings.

## Subchapter 13–200. Prohibited Expression

### Sec. 13–201. Obscenity

No person or organization will distribute or display on the campus any writing or visual image, or engage in any public performance, that is obscene. A writing, image, or performance is "obscene" if it is obscene as defined in Texas Penal Code, Section 43.21 or successor provisions, and is within the constitutional definition of obscenity as set forth in decisions of the United States Supreme Court.

### Sec. 13–202. Defamation

a. No person shall publish to a third party any statement that defames any other person.
b. A statement defames another person if it is: (i) published to a third party other than the subject of the statement or their legal representative; (ii) of and concerning that person; (iii) is a false statement of fact; (iv) that holds the person up to hatred ridicule or contempt; (v) is made negligently, if the person is a private figure or, if the person is a public official or public figure, with knowledge of falsity or reckless disregard of the truth; (vi) which proximately causes damages; and (vii) is not privileged.

### Sec. 13–203. Incitement to Imminent Violations of Law

No person will make, distribute, or display on the campus any statements directed to inciting or producing imminent violations of law under circumstances such that the statements are likely to actually and imminently incite or produce violations of law.

### Sec. 13–204. Harassment

a. No person will engage in conduct that constitutes harassment of another person or make, distribute, or display on the campus or through University information resources any statement that constitutes harassment of any other person. This Section applies to all speech at UT Austin, all speech made using University resources, including speech that is part of teaching, research, or other official functions of the University whether in person or not, and whether oral, written, or symbolic, and off-campus speech that materially interferes with a person's education or employment.
b. "Harassment" means hostile or threatening conduct or speech, whether oral, written, or symbolic, that (1) is sufficiently severe, pervasive, and objectively offensive to create an objectively hostile or threatening environment that interferes with or diminishes the victim's ability to participate in or benefit from the services, activities, or privileges provided by the University; and (2) personally describes or is personally directed to one or more specific individuals. When harassment is sex or gender based, the definitions for quid pro quo and hostile environment harassment, set out in Handbook of Operating Procedures 3-3031(V)(B), apply over this policy's harassment provision.
c. To make an argument for or against the substance of any political, religious, philosophical, ideological, or academic idea is not harassment, even if some listeners are offended by the argument or idea.
d. Verbal harassment may consist of threats, insults, epithets, ridicule, personal attacks, or the categories of harassing sexual speech set forth in Policy 3-3031 of the Handbook of Operating Procedures.
e. Harassment can also consist of nonverbal conduct, such as hazing, practical jokes, damage to property, and physical assault. In the case of sexual harassment and other sex-based misconduct, sexual conduct is often central to the offense. These forms of harassment are prohibited by Policy 3-3031 of the Handbook of Operating Procedures, and by the Regents' *Rules and Regulations*, Rule 30105. Some forms of harassment violate the Prohibition of Campus Violence, Policy 8-1010, in the Handbook of Operating Procedures. Harassment directed at an individual or group of individuals because of race, sex, or certain other characteristics is prohibited by Handbook of Operating Procedures 3-3020. For enhanced sanctions for disciplinary offenses motivated by the race, color, or national origin of a student harmed by the offense, see Subsection 11–701(b) of the *Institutional Rules*. To the extent of any conflict in the definition of verbal harassment, the more detailed definition in this Section controls.
f. An essential part of higher education is to learn to separate substantive argument from personal offense. Inherent in freely exploring ideas and engaging in educational inquiry is discussion where controversial and offensive ideas may be expressed and even welcomed in furtherance of free inquiry and pursuit of knowledge. We strive as a university community to express even the deepest disagreements in a manner that reflects mutual respect, understanding, and sensitivity within the University and in the larger society. These are community norms, even though they cannot be enforced by disciplinary rules. Sometimes community members may engage in a manner that falls short of the desired norms, but this failure does not convert the communication at issue to harassment or a conduct violation.
g. Verbal harassment has been interpreted very narrowly by the federal courts. Policies on verbal harassment or hate speech at many universities have been held unconstitutional, either because they prohibited harassment only when it was based on race, sex, and similar categories, or because they failed to protect the expression of potentially offensive ideas. This policy should be interpreted as narrowly as need be to preserve its constitutionality.
h. Members of the University community are strongly encouraged to report harassment and in some cases are required to do so by law. See Handbook of Operating Procedures 3-3031 and 3-3020 for more information. Investigation of the information provided, and any remedial or disciplinary proceedings, will proceed under the procedures set out in the appropriate policy.

### Sec. 13–205. Solicitation & Commercial Speech

a. General Rules.
    1. No University person, University organization, or member of the public will make, distribute, or display on the campus any statement that promotes, offers, or advertises any product or service for sale or lease that includes commercial identifiers, such as for-profit logos, trademarks, and service marks, or that requests any gift or contribution, except as authorized by Subsection 13–205(b), by section 13–403, or by the Regents' *Rules and Regulations*.
    2. Words or symbols on personal apparel, or on decals or bumper stickers affixed to a vehicle by an owner of that vehicle, are not solicitation within this definition.
    3. Unadorned acknowledgments or thanks to donors are not solicitation within this definition.

b. Rules specific to campus community members.
    1. A registered or sponsored student organization or a registered faculty or staff organization may advertise or sell merchandise, publications, food, or nonalcoholic beverages, or request contributions: for the benefit of the registered or sponsored student organization or registered faculty or staff organization; for the benefit of another registered or sponsored student organization or registered faculty or staff organization; or for the benefit of an organization that is tax-exempt under Section 501(c)(3) of the Internal Revenue Code. No organization may sell items obtained on consignment. No organization may request contributions for an off-campus tax-exempt organization for more than fourteen days in any fiscal year.

2. Registered or sponsored student organizations, registered faculty or staff organizations, and academic or administrative units may sell, distribute, or display literature that contains advertising, subject to the limits in Section 13–403. Individual students, faculty members, and staff members may distribute or display such literature, but may not sell it.
3. Individual students, faculty members, and staff members may post advertisements for roommates, subleases, and sales of used goods that the seller has personally owned and used, but only on a bulletin board or website designated for that purpose by an academic or administrative unit in space that the unit occupies or controls. Any unit that designates a bulletin board or website for this purpose may regulate that bulletin board or website under the procedures set forth in Section 13–504.
4. A resident of a University residence hall or apartment building may occasionally invite one or more salespersons to come to the resident's room or apartment, and in that room or apartment, the salesperson may offer products or services for sale to other residents of that residence hall or apartment building.
5. A registered or sponsored student organization or a registered faculty or staff organization may collect admission fees for programs scheduled in advance in accordance with Subchapter 10–200 of the *Institutional Rules*.
6. A registered or sponsored student organization or a registered faculty or staff organization may collect membership fees or dues at meetings of the organization scheduled in advance under Subchapter 10–200 of the *Institutional Rules*.
7. A registered student organization that is a qualified organization as that term is defined in the Texas Charitable Raffle Enabling Act, Texas Occupations Code, Chapter 2002 or successor provisions, may sell charitable raffle tickets pursuant to that act.
8. A registered or sponsored student organization or a registered faculty or staff organization may host a public performance of a film scheduled in advance in accordance with Subchapter 10–200 of the *Institutional Rules*. In accordance with the Regents' *Rules and Regulations*, Rule 80103, admission fees may be collected. All registered or sponsored student organizations or registered faculty or staff organizations that exhibit films on campus must obtain a Public Performance License for the individual film(s) from a licensing agent. This license is required even if the exhibition of the film is offered to the public for free and is educational in nature. Registered or sponsored student organizations and registered faculty or staff organizations will be required to follow the process prescribed by the film distributor to obtain approval to exhibit the film. Federal copyright laws generally protect all films viewed in public areas, regardless of format. However, registered or sponsored student organizations and registered faculty or staff organizations may exhibit a film publicly if:
   A. the film is in the public domain;
   B. the organization has written permission from the film's producer or other holder of the right to grant such permission; or
   C. the film is obtained from a company that provides a Public Performance License with the purchase or rental of the film.

c. More detailed regulation of solicitation appears in the Regents' *Rules and Regulations*, Rule 80103.

### Sec. 13–206. Antisemitic and other discriminatory conduct.

a. "Antisemitism" means a certain perception of Jews that may be expressed as hatred toward Jews. The term includes rhetorical and physical acts of antisemitism directed toward Jewish or non-Jewish individuals or their property or toward Jewish community institutions and religious facilities.

b. Any incitement of violence, incitement of imminent violation of law, harassment, property damage, disruption of a university activity, or any other violation of state or federal law or university policy that was committed because of antisemitism or the offender's bias or prejudice against a group identified by race, color, disability, religion, national origin or ancestry, age, gender, or sexual preference will be subject to discipline, up to and including possible termination/expulsion.

c. Any registered student group that engages in incitement of violence, incitement of imminent violation of law, harassment, property damage, disruption of a university activity, or any other violation of state or federal law or university policy because of antisemitism or bias or prejudice against a group identified by race, color, disability, religion, national origin or ancestry, age, gender, or sexual preference, is subject to discipline, up to and including possible loss of recognized status for the registered student group.

d. The University's Nondiscrimination Policy, Handbook of Operating Procedures 3-3020, separately prohibits subjecting individuals or groups to discrimination or harassment because of their race, color, sex, pregnancy, gender, gender identity, sexual orientation, gender expression, religion, age, national origin, ethnicity, veteran status, disability, genetic information, military status, or any other legally protected basis.

## Subchapter 13–300. General Rules on Means of Expression

### Sec. 13–301. Disruption

a. Except as expressly authorized in Section 13–802, or by an authorized University official responsible for a program or event sponsored by an academic or administrative unit, no speech, expression, or assembly may be conducted in a way that disrupts or interferes with:
   1. Any teaching, research, administration, function of the University, or other authorized activities on the campus;
   2. The free and unimpeded flow of pedestrian and vehicular traffic on the campus; or
   3. Any public assemblies, distribution of literature, guest speakers, or use of signs, tables, exhibits, or approved amplified sound by the University or another person or organization acting under the rules in this Chapter.

b. Scope
   1. The term "disruption" and its variants, as used in this Rule, are distinct from and broader than the phrase "disruption of activities," as used in the Regents' *Rules and Regulations,* Rule 30103, Number 2, Section 2, and the phrase "disruptive activities," as used in the Regents' *Rules and Regulations*, Rule 40502. This Rule is concerned not only with deliberate disruption, but also with scheduling and coordination of events to manage or minimize the inevitable conflicts between legitimate events conducted in close proximity, and to preserve the University's ability to execute its functions.
   2. Except in the most extreme cases, interference and disruption are unavoidably contextual. Intentional physical interference with other persons is nearly always disruptive in any context. Interfering with traffic depends on the relation between the volume of traffic and the size of the passageway left open. Disruptive noise is the most contextual of all, because it typically depends on factors like the time of day and the occurrence of other activities. Any distracting sound may disrupt a memorial service. Any sound sufficiently loud or persistent to make concentration difficult may disrupt a class or library. Occasional heckling in the speaker's pauses may not disrupt a political speech, but persistent heckling that prevents listeners from hearing the speaker does disrupt a political speech. These illustrations may be helpful, but none of them includes enough context to be taken as a rule. We cannot escape relying on the judgment and fairness of University authorities in particular cases. In this context, where difficult enforcement judgments are unavoidable, it is especially important that the judgment of administrators and law enforcement officials should not be influenced by the viewpoint of those claiming disruption or of those allegedly disrupting.

3. The use of Amplified Sound, drums or other musical or percussive instruments (including makeshift instruments), Guest Speakers, and Assembly for the purpose of expressive activity in the Common Outdoor Areas during the period of final exams and the week immediately preceding final exams is in fact disruptive of University students' ability to prepare for and take their final exams. The University prohibits these activities during the week of final exams and the week immediately preceding final exams. During this time, persons may still engage in other expressive activity permitted by this Chapter. This provision does not limit the University's ability to hold University events during this time period.
4. If amplified sound is authorized for an event under this Chapter, the sound must be turned off by 10:30 p.m. that day.
5. Drums or other musical or percussive instruments (including makeshift instruments) without amplified sounds may be used except when they become disruptive whether because of volume, repeated sound audible in academic or administrative buildings, or any other appropriate basis as determined by the University official charged with managing disruption during the public assembly.
6. As part of the University's educational mission, the University provides dormitories and other living spaces for its students and employees. The University strives to create living spaces that permit a resident to live comfortably, including providing quiet hours to ensure residents have conditions conducive to adequate study, rest, and sleep. With this in mind, any expressive activity in the Common Outdoor Area is deemed disruptive if the sound created by the activity can be heard from a University residence after 10:30 p.m. and before 8:00 a.m the following morning.

c. Potentially disruptive events can often proceed without disruption if participants, administrators, and law enforcement officials cooperate to avoid disruption without stopping the event. In cases of marginal or unintentional disruption, administrators and law enforcement officials should clearly state what they consider disruptive and seek voluntary compliance before stopping the event or resorting to disciplinary charges or arrest.

d. The University is responsible for safety on campus. During periods of disruption as determined by the president, president's delegate, dean of students, or other university official charged with managing activities, events, or space, staff may ask an individual to briefly open a cooler, ice chest, or other receptacle to allow a visual inspection for the presence of weapons or other prohibited items. If a person declines to open the container, they may not remain in the area with the container capable of holding weapons or other prohibited items. Before staff can conduct visual inspections, it must contact the Office of the Vice President for Legal Affairs to ensure the course of action is reasonable, considering the circumstances, and does not violate the law, including but not limited to the Fourth Amendment to the United States Constitution. This provision does not modify, limit, or supersede security measures and policies concerning student housing, athletic events, performances in University venues, or other officially sanctioned events.

e. No assembled groups or individuals may refuse the direction of a University official or police officer to disperse or to cease conduct because it is a disruption to University functions or the educational environment.

### Sec. 13–302. Impermissible Use of and Damage to Property

a. No speech, expression, or assembly may be conducted in a way that damages, defaces, marks (including by chalking), discolors, or alters in any way property of the University or of any person who has not authorized the speaker to damage or deface his or her property.
b. No person may damage, deface, mark, discolor, alter, or interfere with any sign, table, or exhibit posted or displayed by another person or organization acting under the rules in this Chapter.
c. No person may affix a sign, banner, hammock or other item on University property unless otherwise permitted by this Chapter.
d. No person may use or access University property, whether in the Common Outdoor Areas or the Limited Public Forum Areas, in a manner outside of its intended or approved use or access. For example, this provision prohibits persons hanging items from University statues and outdoor art installations and from climbing, hanging from, or otherwise accessing University property in a way that is not otherwise permitted by this Chapter or other University policy. This prohibition also includes, but is not limited to, the activities prohibited by Section 11-402(12)(A-D) of Chapter 11 of the Institutional Rules on Student Services and Activities.

### Sec. 13–303. Coercing Attention

a. No person may attempt to coerce, intimidate, or badger any other person into viewing, listening to, or accepting a copy of any communication.
b. No person may follow another person or persist in requesting or demanding the attention of any other person after that other person has attempted to walk away or has clearly refused to attend to the speaker's communication.

### Sec. 13–304. Other Rules with Incidental Effects on Speech

a. Other generally applicable or narrowly localized rules, written and unwritten, incidentally limit the time, place, and manner of speech, but are too numerous to compile or cross-reference here. For example, libraries typically have highly restrictive rules concerning noise; laboratories and rooms containing the electrical and mechanical infrastructure of the University typically have safety rules and rules excluding persons without specific business there; fire and safety codes prohibit the obstruction of exits and limit the constriction of hallways. Speech within classrooms is generally confined to the subject matter of the class; the right to attend a class at all is subject to registration and payment of tuition; individual professors may have rules of decorum in their classrooms. These "time, place, and manner" rules limit the rights of persons to enter and speak in the places to which these rules apply.
b. Reasonable and nondiscriminatory "time, place, and manner" rules generally control over the rights of free speech guaranteed in this Chapter. But even "time, place, and manner" rules are subject to the constitutional right of free speech. Accordingly, such rules must be viewpoint neutral and cannot regulate speech more restrictively than they regulate other activities that cause the problems to be avoided by the rule, or more than is reasonably necessary to serve their purpose. Such rules cannot ban unobtrusive forms of communication with no potential for disruption even in the specialized environment subject to the localized rule. Thus, for example, means of silent expression or protest confined to the speaker's immediate person, such as armbands, buttons, and T-shirts, are nearly always protected because they are rarely disruptive in any environment.

### Sec. 13–304. Other Rules with Incidental Effects on Speech

While the University's Common Outdoor Areas are generally available to its students, faculty, staff, and the public for expressive activity, subject to the rules herein, the primary purpose and function of the University is an institution of higher education. In order to protect the core functions inherent to such an institution and its students, faculty, and staff, the Common Outdoor Area is generally open for expressive activity from 8:00 a.m. through 10:30 p.m., subject to this Chapter. Individuals and groups present for the purpose of engaging in expressive activity outside of this permitted time period are trespassing. Trespassing individuals are subject to University discipline and removal and/or arrest by law enforcement. University events and programming are not expressive activity subject to this curfew or other limitations in this rule.

## Subchapter 13–400. Distribution of Literature

### Sec. 13–401. General Rule on Distribution of Literature

a. "Literature" means any printed material, including any newspaper, magazine, or other publication, and any leaflet, flyer, or other informal matter, that is produced in multiple copies for distribution to potential readers.
b. Registered or sponsored student organizations, registered faculty or staff organizations, and academic or administrative units may sell, distribute, or display literature on campus, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300. Individual students, faculty members, and staff members may distribute or display literature, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300, but may not sell it. In either case, no advance permission is required. Members of the public may distribute literature in the common outdoor areas, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300, but may not sell literature.

### Sec. 13–402. Not-for-Profit Literature Only

a. Except as expressly authorized by the Regents' *Rules and Regulations* or by contract with the University, no person or organization may sell, distribute, or display on campus any publication operated for profit. A registered or sponsored student organization or a registered faculty or staff organization may sell publications operated for profit as part of a fundraiser authorized by, and subject to the limits of, Subsection 13–205(b)(1).
b. A publication is operated for profit if any part of the net earnings of the publication, or of its distribution, benefits any private shareholder or individual.

### Sec. 13–403. Limits on Advertising

Literature distributed on campus may contain the following advertising:

1. advertising for a registered or sponsored student organization, a registered faculty or staff organization, or an academic or administrative unit;
2. advertising for an organization that is tax exempt under Section 501(c)(3) of the Internal Revenue Code;
3. paid advertising in a publication primarily devoted to promoting the views of a not-for-profit organization or to other bona fide editorial content distinct from the paid advertising; and
4. other advertising expressly authorized by the Regents' *Rules and Regulations* or by contract with the University.

All other advertising in literature distributed on campus is prohibited.

### Sec. 13–404. Clean Up of Abandoned Literature

Any person or organization distributing literature on campus will pick up all copies dropped on the ground in the area where the literature was distributed.

## Subchapter 13–500. Signs, Banners, and A-Frames

### Sec. 13–501. General Rule on Signs

a. "Sign" means any method of displaying a visual message to others, except that transferring possession of a copy of the message is distribution of literature and not a sign.
b. Subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300, a University person or organization may display a sign by holding or carrying it, by displaying it at a table (see Subchapter 13–600), or by posting it on a bulletin board or other designated location. Signs may not be staked in the ground or posted in any other location except for those areas allowed by longstanding tradition or otherwise allowed by Subsections 13–304(a)-(b) and 13–504(a). Subject to viewpoint-neutral size requirements, University Housing and Dining has designated the windows and doors of a residence hall room as locations where the resident(s) of that room may post signs. Section 13–504 lists other designated locations.

### Sec. 13–502. Hand-Held Signs

a. A University person or University organization may display a sign on campus by holding or carrying it by hand or attaching it to their person. Members of the public may display a sign in the common outdoor areas by holding or carrying it by hand or attaching it to their person. No advance permission is required. Signs on sticks or poles or otherwise attached to any device are prohibited.
b. Hand-held signs constructed of materials that create a hazard to other people are not permitted. Signs constructed of rigid materials, including sticks, poles, wood, metal, hard plastic, or other materials that could be construed as a hazard are not permitted.
c. Any person holding or carrying a sign will exercise due care to avoid bumping, hitting, or injuring any other person.
d. Any person holding or carrying a sign at a speech, performance, or other event will exercise due care to avoid blocking the view of any other person observing the speech, performance, or event. Depending on the venue, this may mean that signs may be displayed only around the perimeter of a room or an audience.
e. A law enforcement officer, the Dean of Students, or an usher or other University employee (if authorized by officials responsible for managing the venue), may warn any person that his or her sign is being handled in violation of Subsections 13–502(a), (b), (c) or (d). If the violation persists after a clear warning, the law enforcement officer, Dean of Students, authorized usher, or other authorized employee may confiscate the sign. A law enforcement officer may take any action necessary to keep the peace, including but not limited to issuing a criminal trespass warning to or arresting the violator.

### Sec. 13–503. Banners

"Banner" means an affixed, stationary sign hung from a structure or building or between two buildings, structures, or poles. Banners on poles may not be carried by individuals.

a. Hand-held banners. University persons, University organizations, and members of the public are permitted to display a hand-held banner carried by two or more individuals without poles, in accordance with Rule 13–502(a) above, in the common outdoor areas.
b. Temporary banner space designations.
    1. The Dean of Students will designate temporary banner spaces where banners may be hung in outdoor locations not occupied or controlled by any other academic or administrative unit. Temporary banner spaces are not open to members of the public.
    2. Other academic or administrative units may designate one or more temporary banner spaces where banners may be hung in indoor or outdoor locations that the unit occupies or controls. These temporary banner spaces are not open to members of the public.
c. Space priority.

1. Academic or administrative units, registered or sponsored student organizations, and registered faculty or staff organizations may hang banners in locations designated under Subsection 13–503(b). The Dean of Students may set reasonable limits on the number of banners that any unit or organization may hang at one time. Individuals and members of the public may not hang banners.
2. Advance permission is required from the unit administering the location; usually, advance reservations are required. Academic or administrative units advertising official University events or programs may be given priority. In locations administered by academic or administrative units other than the Dean of Students, organizations affiliated with the unit administering the location may be given priority.

d. Time limits.
1. In locations administered by the Dean of Students, each banner may be hung with a minimal commitment of two weeks. After the initial week reservation, the banner may be renewed from week to week, for up to four weeks, if space is available.
2. Other units administering a location for banners may limit the time each banner may hang. Any such time limit will be applied without discrimination to all organizations, except that academic or administrative units may be given preference.

e. The Dean of Students will maintain, on a website or on a flyer or pamphlet available at the Dean of Students' office:
1. a list of outdoor temporary banner spaces where banners may be hung;
2. the academic or administrative unit that administers this banner policy at each outdoor location; and
3. a current description of the rules and procedures for reserving a temporary banner space in order to hang a banner in locations administered by the Dean of Students.

f. The unit administering a banner location may require that the physical work of hanging the banners be performed only by Department of Facilities Services employees or other appropriate University personnel.

g. A law enforcement officer, dean of students staff member, or other University official charged with managing activities, events, or spaces may confiscate banners handled or affixed in violation of this Policy or in instances that create a safety concern.

### Sec. 13–504. Signs in Other Designated Locations (Including Departmental Bulletin Boards)

a. Each academic or administrative unit may authorize the posting of signs in spaces that unit occupies and controls. Such authorization may be granted by general rule, by stamping or initialing individual signs, or by longstanding tradition.

b. Signs in spaces occupied by academic or administrative units may be:
1. confined to bulletin boards or other designated locations;
2. subjected to viewpoint-neutral rules limiting the size of signs, limiting how long they may be posted, requiring each sign to show the date it was posted and the name of the person or organization who posted it, and similar rules designed to facilitate fair and equal opportunities to post signs; and
3. confined to official statements or business of the unit, or to certain subject matters of interest within the unit, or to signs posted by persons or organizations affiliated with the unit.

c. Each academic or administrative unit will post on or near each bulletin board or other designated location that it administers:
1. either the rules applicable to that bulletin board or location, or a particular office or website where the rules applicable to that bulletin board or location may be found; and
2. if a stamp or initials are required on signs before they are posted on that bulletin board or location, the name and office location of the person whose stamp or initials are required.
3. This notice will be posted in the upper left corner of each bulletin board or other designated location for posting signs, or conspicuously in another nearby location. If no such notice is posted, then the only applicable rules are those contained in Subchapter 13–200 and Sections 13–301 to 13–304.

d. Within the scope of the subject matters permitted on a particular bulletin board or other designated location, no academic or administrative unit will discriminate on the basis of the political, religious, philosophical, ideological, or academic viewpoint expressed on a sign.

e. This Section does not apply to any enclosed bulletin board or display case that is accessible only to authorized personnel for official University business.

## Subchapter 13–600. Tables

### Sec. 13–601. General Rule on Tables

University persons and University organizations may set up tables to display literature, disseminate information and opinions, and raise funds, subject to the location restrictions and other rules in this Subchapter and to the general rules in Subchapter 13–200, Subchapter 13–300, and Subchapter 13–1000. University persons and University organizations do not need advance permission to set up tables but are encouraged to reserve tabling space on the West Mall and in other high-demand areas where tabling spaces are designated and limited. Subject to the above rules, members of the public may set up tables in the Common Outdoor Areas and do not need advance permission except on the West Mall and on the east side of Speedway between 21st Street and the south edge of Gregory Plaza; in those locations, members of the public may not set up tables without obtaining a reservation as described below. Members of the public may not set up tables in the University's Limited Public Forum Areas.

### Sec. 13–602. Locations

a. Subject to the restrictions elsewhere in these rules, including in Subsection 13–602(b) and the rules on disruption of other functions and interference with vehicular and pedestrian traffic (see Section 13–301), University persons, University organizations, and members of the public may set up tables on impervious surfaces in the Common Outdoor Areas on the campus. University persons and University organizations may set up tables in University buildings in any large, open, indoor location as permitted by the specific building protocols and with permission of the academic or administrative unit controlling the space. In some buildings, tabling may be prohibited completely. The Main building is not available for tabling at any time.

b. Additional restrictions.
1. Tables may not be set up on the Main Mall between 8:00 a.m. and 5:00 p.m. on weekdays, or on the west side of any portion of Speedway at any time.
2. Tables may not be set up in areas covered by grass, landscaping, or other pervious substances.
3. Tables may not be set up inside any library, classroom, laboratory, performance hall, stadium, or office, or in any hallway less than ten feet wide, without permission from the academic or administrative unit that controls the space, or from the faculty member or staff member who controls the space at a particular time.
4. An academic or administrative unit may further specify these rules by restricting tables to reasonable locations in spaces occupied by that unit. Academic and administrative units are encouraged to state any such rules clearly in writing and to publish those rules on a website or on a flyer or pamphlet available at the chief administrative office of the unit.
5. Tabling space on the West Mall or on the east side of Speedway between 21st Street and the south edge of Gregory Plaza may be reserved by University persons, University organizations, and members of the public by submitting a request using

the HornsLink.org PublicReservation Form. Members of the general public who wish to table on the West Mall or on the east side of Speedway between 21st Street and the south edge of Gregory Plaza must have a reservation. University persons and University organizations are not required to have a reservation to table on the West Mall or on the east side of Speedway between 21st Street and the south edge of Gregory Plaza, but are encouraged to secure a reservation. Tabling space on the West Mall or on the east side of Speedway between 21st Street and the south edge of Gregory Plaza may be reserved up to four weeks in advance by University persons or organizations and up to three weeks in advance by members of the general public.

6. Tables must be attended at all times. Unattended tables and their contents may be confiscated by University personnel.

c. If any table is set up in a prohibited or disruptive location, any University employee pointing out the violation is encouraged to also point out other locations, as nearby as is reasonably possible, where the table is permitted.

### Sec. 13–603. Tabling Cleanup

Every person or organization sponsoring a table will remove their table, items used during tabling, and any litter from the area around the table before vacating the space.

### Sec. 13–604. Sources of Tables

University persons and organizations may supply their own tables. In addition, the Dean of Students maintains a supply of tables for registered or sponsored student organizations that may be checked out for use on campus in designated areas. The Dean of Students will maintain, on a website or on a flyer or pamphlet available at the office of the Dean of Students, a current description of the rules and procedures for checking out tables. Members of the general public, and University persons and organizations other than registered or sponsored student organizations, must supply their own tables.

## Subchapter 13–700. Exhibits

### Sec. 13–701. General Rule on Exhibits

a. “General exhibit” means an object or collection of related objects, designed to stand on the ground or on a raised surface, which is not a table, is designed for temporary display, and is not permanently attached to the ground including, but not limited to floor decals, flags, outdoor decorations, and panels.

b. “A-frame exhibit” means a movable and self-supported sign board designed to stand on the ground and remain overnight in a temporary outdoor exhibit space. A-frame exhibits may not exceed five feet in height or width. Structures that do not meet these criteria will be considered general exhibits and will be subject to the rules governing general exhibits.

c. Academic or administrative units, registered or sponsored student organizations, and registered faculty or staff organizations may erect general exhibits and A-frame exhibits, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200, Subchapter 13–300, and Subchapter 13–1000. Advance permission is required from the Dean of Students, except that an academic unit may authorize indoor exhibits in a space that it occupies and controls. A-frame exhibits may not be erected on the Main Mall at any time . Members of the public and individual students, faculty, or staff may not erect general exhibits, but may—with permission from the Dean of Students—erect A-frame exhibits in approved locations, subject to the rules in this Subchapter and the general rules in Subchapter 13–200, Subchapter 13–300, and Subchapter 13–1000.

### Sec. 13–702. Application Process

Requests for approval of, or reservation of space for, outdoor general exhibits and A-frame exhibits may be submitted via the HornsLink.org Public Reservation Form.

### Sec. 13–703. Approval Process

a. General exhibits.

1. The Dean of Students will designate temporary outdoor exhibit spaces where academic or administrative units, registered or sponsored student organizations, and registered faculty or staff organizations may place general exhibits upon approval by the Dean of Students. Applications must, where feasible, be submitted at least fourteen days in advance of the beginning of the requested display period. The Dean of Students will approve a general exhibit described in a completed and timely application under Section 13–702 unless the Dean of Students disapproves the application under the criteria in Section 10–203 of the Institutional Rules, or for other good cause. The Dean of Students will, if possible, advise the applicant how to correct any conditions that preclude approval of the application.
2. The Dean of Students will consider the totality of the circumstances, including safety concerns, as part of the approval process.

b. A-frame exhibits.

1. The Dean of Students will designate locations where A-frame exhibits may be placed. If an academic or administrative unit, a registered or sponsored student organization, or a registered faculty or staff organization wishes to place an A-frame exhibit in a location that is not one of the designated A-frame exhibit locations, then the structure will be considered a general exhibit under this Subchapter and may be placed, if approved, only in a designated temporary outdoor exhibit space. Members of the public and individual students, faculty, or staff may not erect A-frame exhibits outside of the designated A-frame exhibit locations.
2. The Dean of Students will maintain, on a website, a current description of the rules and procedures for reserving a space for A-frame exhibits on campus. Space for A-frame exhibits may be reserved up to four weeks in advance by University persons or organizations and up to three weeks in advance by members of the general public. The Dean of Students may establish reasonable limits on the number of times per semester or per academic year an individual or organization may reserve space for an A-frame exhibit.
3. The Dean of Students may establish reasonable limits on the number of A-frame exhibits that an individual or organization may display in a designated area, or on campus, at any time.

### Sec. 13–704. Time Limits

a. General exhibits.

1. In locations administered by the Dean of Students, each exhibit may be displayed for up to fourteen consecutive days. The exhibit may be renewed for an additional fourteen days if space is available.
2. The exhibit may be displayed no earlier than 8:00 a.m. and must be removed by 10:00 p.m. each day and may be re-erected each morning during the permit period. Requests to display exhibits overnight will be considered on a case-by-case basis and subject to Subsection 13–703.
3. If an exhibit is displayed without permission, including outside the permit period, the exhibit may be removed by the Department of Facilities Services at the expense of the person or organization sponsoring the exhibit.

b. A-frame exhibits.
   1. Each A-frame exhibit may be placed for up to fourteen consecutive days and remain overnight. The A-frame exhibit may be renewed for an additional fourteen consecutive days if space is available.
   2. If an A-frame exhibit is left on campus without permission, including outside the permit period, the exhibit may be removed by the Department of Facilities Services at the expense of the person or organization sponsoring the exhibit.

### Sec. 13–705. Exhibit Cleanup

The person or organization sponsoring an exhibit will remove the exhibit and any litter from the area around the exhibit before vacating the space.

### Sec. 13–706. Liability

The person or organization sponsoring an exhibit assumes full responsibility for the exhibit, including all injuries or hazards that may arise from the exhibit. The University will not be liable for any damage that may occur to the exhibit, and the person or organization sponsoring the exhibit will indemnify the University for any claims arising from the exhibit's presence on campus.

## Subchapter 13–800. Amplified Sound

### Sec. 13–801. General Rule on Amplified Sound

Registered or sponsored student organizations, registered faculty or staff organizations, and members of the public may use amplified sound on campus at designated times and locations, subject to the rules in this Subchapter and to the general rules in Subchapter 13–200 and Subchapter 13–300. Advance permission is required. Academic and administrative units need not obtain permission from the Dean of Students to use amplified sound in areas under their control, but should provide advance notice to the Dean of Students when feasible so that the Dean of Students can coordinate timing and help units avoid conflicts. The following unit-controlled areas are sufficiently isolated that coordination by the Dean of Students is unnecessary: the Blanton Museum of Art Courtyard; the McCombs School of Business South Plaza; the Walter Cronkite Plaza at the Jesse H. Jones Communication Center; and the Whitis Court Courtyard.

This Subchapter creates limited exceptions to the general rule on disruption in Section 13–301. An Amplified Sound Areas Map may be found here.

### Sec. 13–802. Location and Times of Weekday Amplified Sound Areas

a. West Mall Amplified Sound Area.
   1. The West Mall Amplified Sound Area is the extreme east end of the West Mall, adjacent to the west steps of the Main Building.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 11:30 a.m. to 1:30 p.m. on weekdays.
   3. All academic and administrative units, registered and sponsored student organizations, and faculty and staff organizations may use sound equipment owned or controlled by the Dean of Students' office for this sound area.
   4. Members of the public must use their own sound equipment. This sound area requires a reduced decibel level as compared to other sound areas to ensure educational activity in close proximity is not disturbed.
   5. Per Section 61.004 of the Texas Elections Code, groups making a political speech, or electioneering for or against any candidate, measure, or political party may not use amplified sound on the West Mall or anywhere within 1,000 feet of a polling place when the polling place is open.

b. Winship Circle Amplified Sound Area.
   1. The Winship Circle Amplified Sound Area is the grassy area east of the East Mall Fountain, west of Waller Creek, and south of Winship Hall.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. on weekdays.

c. Battle Oaks Amplified Sound Area.
   1. The Battle Oaks Amplified Sound Area is the area bounded by the north wall of Hogg Auditorium, by an extension drawn northward from the east wall of the Texas Union, by the south edge of the sidewalk on the south side of 24th Street, and by the west edge of the sidewalk on the west side of Inner Campus Drive.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. on weekdays.

d. Mustangs Amplified Sound Area.
   1. The Mustangs Amplified Sound Area is the area bounded by the sidewalk on the east side of San Jacinto Boulevard, by the west wall of the Texas Memorial Museum, and by the outer edge of the two stairways on either side of the lawn.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. on weekdays.

e. San Jacinto Street Amplified Sound Area.
   1. The San Jacinto Street Amplified Sound Area is the area bounded by the south wall of the Art Building, by the east edge of the sidewalk on the east side of San Jacinto Boulevard, by the north edge of the sidewalk on the north side of 23rd Street, and by the west edge of the sidewalk on the west side of Trinity Avenue.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. on weekdays.

f. LBJ Fountain Amplified Sound Area.
   1. The LBJ Fountain Amplified Sound Area is the area bounded by the east edge of Robert Dedman Drive, by the first sidewalk north of the LBJ Fountain, by a line drawn tangent to the west side of the LBJ Fountain and parallel to Robert Dedman Drive, and by the base of the hill on the south side of the LBJ Fountain.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. on weekdays.

g. 2609 University Avenue Courtyard Amplified Sound Area.
   1. The 2609 University Avenue Courtyard Amplified Sound Area is the area bounded by the 2609 University Avenue Building on the north, south and east sides, and by the east edge of the sidewalk on the east side of University Avenue.
   2. University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. on weekdays.

h. Creekside Residence Hall Lawn Amplified Sound Area.
    1. The Creekside Residence Hall Lawn Amplified Sound Area is the area bounded by Dean Keeton Street on the north, by Waller Creek on the east and south, and by San Jacinto Boulevard on the west and south.

University persons, University organizations, and members of the public may use amplified sound in this area from 8:00 a.m. to 5:00 p.m. on weekdays.

### Sec. 13–803. Regulation and Scheduling of Weekday Amplified Sound

a. The Dean of Students may prescribe rules concerning scheduling, sound levels, the location of speakers and the direction in which they are pointed, and other rules to facilitate the use of weekday amplified sound areas, to mediate any conflict with University functions and other nearby activities, and to manage environmental impact. All such rules will be reasonable and nondiscriminatory.
b. Reservations.
    1. University persons, University organizations, and members of the public wishing to use a weekday amplified sound area must reserve a particular area at a particular time. Reservations by University persons and University organizations must be made with the Dean of Students on a form prescribed by the Dean of Students. Members of the public may reserve space by making a request on the HornsLink.org Public Reservation Form. The Dean of Students will approve a properly completed application to reserve an amplified sound area, unless the application or request must be disapproved under the criteria in Section 10–203 of the *Institutional Rules* or under rules promulgated by the Dean of Students under the authority of this Section.
    2. The Dean of Students may limit the number or frequency of reservations for each applicant to ensure reasonable access for all persons and organizations desiring to use amplified sound on weekdays.
    3. When amplified sound areas are not reserved for use for an assembly including amplified sound, they are available, without reservation, for permitted expressive activities that do not involve amplified sound. Such as-available expressive use does not permit a person to use amplified sound without a reservation. Any person or organization using or occupying the space without a reservation must yield control of the space in time to permit any user with a reservation to begin using the space promptly at the beginning of the reserved time.

c. Amplified sound in the West Mall Sound Area is in fact disruptive of teaching, administration, and research in the Main Building, in the Flawn Academic Center, in Goldsmith Hall, in the West Mall Office Building, and in Battle Hall. Amplified sound in the Winship Circle Amplified Sound Area is in fact disruptive of teaching, administration, research and performance in College of Liberal Arts Building, the Laboratory Theatre and Winship Hall. The disruption inherent in this use of amplified sound is expressly authorized, but no other disruption is authorized. Disruption is permitted to this extent because otherwise, it would be necessary to ban all use of amplified sound in and near the center of campus during working hours.
d. University persons, University organizations, and members of the public using amplified sound are responsible for maintaining a passageway for pedestrians that is adequate to the volume of pedestrian traffic passing through the area. Should the size of the assembly exceed the maximum number of participants that is safe for a given location, participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly.
e. The amplified sound locations are maintained on the Amplified Sound Areas Map. Any designations of additional areas, any additional rules regulating the designated areas, and the rules and procedures for reserving the use of a designated area, will be clearly stated on a Web site.

### Sec. 13–804. Amplified Sound on Evenings and Weekends

a. With advance permission, University persons, University organizations, and members of the public may use amplified sound in any location in the common outdoor areas of campus, including the weekday amplified sound areas designated in Section 13–802, after 5:00 p.m. on weekdays, and after 8:00 a.m. on weekends, except for the early morning hours excluded in Subsection 13–804(b).
b. If amplified sound is authorized for an event , the sound must be turned off by 10:30 p.m.
c. The Dean of Students may prescribe reasonable and nondiscriminatory rules concerning scheduling, sound levels, the location of speakers and the direction in which they are pointed, and other rules to facilitate the use of amplified sound on evenings and weekends, to mediate any conflict with University functions and other nearby activities, and to manage environmental impact.
d. Use of amplified sound on evenings and weekends requires advance permission from the Dean of Students. Reservations by University persons and University organizations must be made with the Dean of Students on a form prescribed by the Dean of Students. Members of the public may reserve space by making a request on the HornsLink.org Public Reservation Form. The Dean of Students will authorize amplified sound as described in a completed application unless the Dean of Students finds that the application or request must be disapproved under the criteria in Section 10–203 of the *Institutional Rules* or under rules promulgated by the Dean of Students under the authority of this Section. The Dean of Students will advise each applicant or requestor how to correct, if possible, any conditions that preclude approval of its application.

### Sec. 13–805. Amplified Sound Indoors

University persons and University organizations may use amplified sound indoors. Amplified sound sufficient to be heard throughout the room may be used in any room in any building, but the Dean of Students or the administrative head of the academic or business unit managing the space may limit or prohibit sound that would be disruptive outside the room. Reservations may be required. Rules concerning use of University buildings are contained in Chapter 10 of the *Institutional Rules*.

## Subchapter 13–900. Public Assemblies

### Sec. 13–901. General Rule on Public Assemblies

a. “Publicly assemble” and “public assembly” include any gathering of persons, including discussions, rallies, and demonstrations. The rules in Subchapter 13–800 apply to any use of amplified sound at a public assembly.
b. Persons and organizations may publicly assemble on campus in any place where, at the time of the assembly, the persons assembling are permitted to be. This right to assemble is subject to the rules in this Chapter and to the rules on use of University property in Chapter 10 of the *Institutional Rules*. No advance permission is required in the common outdoor areas.

### Sec. 13–902. Reservation of Space

a. Common outdoor areas reservations.
    1. University persons, University organizations, and members of the public may reserve a space to assemble in the common outdoor areas, as defined by this Chapter. This is in addition to the amplified sound areas which are also available for reservation.
    2. Reservations by University persons and University organizations must be made with the Dean of Students on a form prescribed by the Dean of Students. Members of the public may reserve space by making a request on the Hornslink.org

Public Reservation Form. Applications and requests for a reservation for such assemblies will be approved pursuant to Subchapter 10–200 of the *Institutional Rules*.
3. If the expected attendance at an assembly is twenty-five or more people, advance notice of no less than two weeks is recommended. Persons and organizations are encouraged to seek a reservation of a space that is suited to their assembly's anticipated size.

b. Limited public forum areas reservations.
   1. Registered student, sponsored student, registered faculty, or staff organizations and academic or administrative units may reserve a space to assemble in permitted limited public forum areas, as defined by this Chapter.
   2. The Dean of Students will receive applications for reservations of a space within the limited public forum areas. Applications for a reservation for such assemblies will be processed under the provisions in Subchapter 10–202 of the *Institutional Rules*. Individual faculty, staff, and students may not reserve space under the provisions in Chapter 10.
   3. If the expected attendance at an event with a guest speaker is twenty-five or more people, advance notice of no less than two weeks is required.

c. Any person or organization with a reservation has the right to the reserved room or space for the time covered by the reservation. Any person or organization using or occupying the room or space without a reservation must yield control of the room or space in time to permit any user with a reservation to begin using the room or space promptly at the beginning of its reserved time.
d. Should the size of any assembly exceed the maximum number of participants that is safe for a given location, including a reserved space, assembly participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly to the extent relocation is practicable.
e. While reservations are not always required, they are strongly encouraged. Without a reservation, a person or organization may find the facility locked or the space in use by another person or organization.
f. In some buildings, public assemblies unrelated to the purpose of the building may be prohibited completely. University persons and organizations seeking to engage in a public assembly inside a building are responsible for confirming such assembly is permitted in a given building. To avoid disruption of University operations, the Main Building may not be used for such public assembly at any time.

### Sec. 13–903. Notice and Consultation

a. Persons or organizations may publicly assemble on campus in any place where, at the time of the assembly, the persons assembling are permitted to be.
b. Persons or organizations that are planning a public assembly in a common outdoor area with or without a guest speaker and expected attendance of more than twenty-five participants, including potential counter-demonstrators, are encouraged to provide advance notice of no less than two weeks to the Dean of Students to help the University improve the safety and success of the expressive activity. Members of the public may provide this notice by submitting a description of the planned event using the Hornslink.org Public Reservation Form. If there is uncertainty about applicable University rules, the appropriateness of the planned location, or possible conflict with other events, persons and organizations are encouraged to consult the Dean of Students. Should the size of the assembly exceed the maximum number of participants that is safe for a given location, participants will be directed by campus authorities to relocate to a space that is better suited to the size of the assembly.
c. University persons or organizations planning an event in the limited public forum areas with or without a guest speaker and an expected attendance of more than twenty-five participants, are required to provide advanced notice of no less than two weeks to the Dean of Students to help the University improve the safety and success of the expressive activity. Notice will be provided on a form prescribed by the Dean of Students.
d. The notice and consultation requirements of this Subchapter do not apply to academic or administrative units.
e. The University persons and University organizations notice and consultation requirements of this Subchapter may be waived by the Dean of Students or his or her designee.
f. Registered student, sponsored student, registered faculty and staff organizations are afforded privileges not available to individual faculty, staff, and students. Individuals may not reserve indoor space on campus.

## Subchapter 13–1000. Guest Speakers

### Sec. 13–1001. Definitions

"Guest speaker" means a speaker or performer who is not a student, faculty member, or staff member.

### Sec. 13–1002. Who May Present

a. Subject to the rules in this Chapter, University persons, University organizations, and members of the public may present guest speakers in common outdoor areas of the campus.
b. Registered student, sponsored student, registered faculty and staff organizations, and academic or administrative units may present guest speakers in the limited public forums of the campus. In the case of registered student organizations and sponsored student organizations, advance permission from the Dean of Students is required. Registered faculty organizations are required to seek advance permission from the executive vice president and provost. Registered staff organizations are required to seek advance permission from the senior vice president and chief operating officer. Individuals may not present a guest speaker in University buildings or University facilities.

### Sec. 13–1003. Location and Form of Presentation

a. Subject to the rules in this Chapter, including the applicable time, place, and manner rules, University persons, University organizations, and members of the public may utilize the common outdoor areas for guest speaker assemblies. No reservation or prior approval is necessary, but notice and reservations are encouraged for assemblies of twenty-five or more people.
b. A guest speaker may present a speech or performance, or lead a discussion of specified duration, at a time announced in advance, in a fixed indoor location approved by the Dean of Students.
   1. A guest speaker may distribute literature indoors only immediately before, during, and immediately after the normal course of his or her speech, presentation, or performance, and only to persons in attendance. Only literature that complies with Subchapter 13–400 may be distributed.
   2. Student, faculty, and staff organizations may not invite the public at large to events in University buildings or facilities.

c. A guest speaker may not:
   1. accost potential listeners who have not chosen to attend the speech, performance, or discussion; or
   2. help staff a table or exhibit set up outside of the common outdoor areas or in the University buildings or facilities.

d. No University person, University organization, or member of the public may present a guest speaker in violation of the prohibitions against solicitation in Section 13–205 or cosponsorship in Chapter 10, Section 13–304 of the Institutional Rules.

### Sec. 13–1004. Application for University Building or Facility Space for Presentation of Guest Speakers

In accordance with Regents' *Rules and Regulations*, Rule 40501, Section 3.5, all registered students, sponsored students, registered faculty and staff organizations that wish to present a guest speaker in a University building or facility space will apply through a prescribed process, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier.

1. A registered or sponsored student organization that wishes to present a guest speaker will apply to the Dean of Students, through a process prescribed by the Dean of Students, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier. The application will be combined with an application under Section 10–202 of the *Institutional Rules* to reserve the use of a University room or space for the event. The Dean of Students will approve an application properly made under Subsection 13–1004(a) unless it must be disapproved under the criteria in Chapter 10, Section 10–203 of the *Institutional Rules*.
2. A registered faculty organization that wishes to present a guest speaker will apply to the executive vice president and provost through a process prescribed by the executive vice president and provost, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier. The application will be combined with an application under Chapter 10, Section 10–202 of the *Institutional Rules* to reserve the use of a University room or space for the event. The executive vice president and provost will approve an application properly made under Subsection 13–1004(a) in consultation with the Dean of Students unless it must be disapproved under the criteria in Chapter 10, Section 10–203 of the *Institutional Rules*.
3. A registered staff organization that wishes to present a guest speaker will apply to the senior vice president and chief financial officer through a process prescribed by the senior vice president and chief financial officer, at least two weeks before the scheduled event or any planned advertising for the event, whichever is earlier. The application will be combined with an application under Chapter 10, Section 10–202 of the *Institutional Rules* to reserve the use of a University room or space for the event. The senior vice president and chief operating officer will approve an application properly made under Subsection 13–1004(a) in consultation with the Dean of Students unless it must be disapproved under the criteria in Chapter 10, Section 10–203 of the *Institutional Rules*.

### Sec. 13–1005. Obligations of Presenting Organization

A University person or registered student organization or registered faculty or staff organization that presents a guest speaker in a University building or facility must make clear that:

the organization, and not the University, invited the speaker;
the views expressed by the speaker are his or her own and do not necessarily represent the views of the University, The University of Texas System, or any System institution; and
members of the general public are not invited to attend the guest speaker's presentation with the exception of presentations put on by academic or administrative units.

## Subchapter 13–1100. Responding to Speech, Expression, and Assembly

### Sec. 13–1101. General Rule on Responding

Persons and organizations may respond to the speech, expression, or assembly of others, subject to all the rules in this Chapter.

### Sec. 13–1102. Applications of Section

a. Responders may not damage or deface signs or exhibits, disrupt public assemblies, block the view of participants, or prevent speakers from being heard.
b. Means of response that are permitted in many locations and without advance permission or reservation, such as signs, distribution of literature, and public assembly without amplified sound, may be used immediately and in any location authorized in this Chapter.
c. Means of response that require advance permission or reservation, such as temporary banners, A-frames exhibits, general exhibits, and amplified sound, may be used as soon as the needed permission or reservation may be arranged. Temporary banner space, temporary outdoor exhibit space, and some amplified sound areas may be unavailable on short notice because of earlier reservations, but the Dean of Students will, where feasible, expedite approval of available temporary banner spaces, available temporary outdoor exhibit spaces, and amplified sound areas where necessary to permit appropriate response to other speech, assembly, or expression.
d. Means of response that are confined to authorized locations, such as banners, exhibits, and amplified sound, may be used only in those locations. It is not possible to respond to amplified sound with amplified sound in the same location; similarly, if an exhibit or public assembly is in a location where amplified sound is not permitted, it is not possible to respond with amplified sound in that location. In either case, it is possible to respond with amplified sound in another location and to use signs or distribution of literature to advertise the response at the other location.

## Subchapter 13–1200. Enforcement and Appeals

### Sec. 13–1201. Police Protection

a. It is the responsibility of the University to protect the safety of all persons on campus and to provide police protection for speakers, public assemblies, persons staffing or viewing exhibits, and other events. The normal patrolling of officers during regular duty areas in the area of such events will be at the cost of the University. When the magnitude, timing, or nature of an event in a University building, University facility, or other area of the University's limited public forum that requires overtime hours from police officers (including contract hours for officers hired from other departments or private security agencies), the University will, to the extent specified in Subsection 13–1201(b) and Subsection 13–1201(c), charge the cost of overtime or contract officers to the person or organization sponsoring the event or exhibit that requires overtime police protection. The purpose of Subsection 13–1201(b) and Subsection 13–1201(c) is to charge for police overtime where reasonably possible, but not to charge for police overtime made necessary by the content of speech at the event or by the controversy associated with any event.
b. University persons or organizations planning such events should budget for the cost of police protection. A reasonable and nondiscriminatory fee for overtime police work will be charged to the registered student, sponsored student, faculty, or staff organization for events in a University building, University facility, or other area of the University's limited public forum that require overtime police protection, and
   1. charge a price for admission; or
   2. have a paid speaker, band, or other off-campus person or organization for services at the event.

c. The University will have the sole power to decide, after reasonable consultation with the person or organization planning the event, whether and to what extent overtime police protection is required. No fee will be charged for officers assigned because of political, religious, philosophical, ideological, or academic controversy anticipated or actually experienced at the event. All fees will be based on the number of officers required for an uncontroversial event of the same size and kind, in the same place and at the same time of day, handling the same amount of cash.

d. Nothing in this Section applies to any interdepartmental charge or transfer among units or accounts funded by the University.

## Sec. 13–1202. Response to Violations

a. Students wishing to make a grievance regarding a violation of Texas Education Code § 51.9315 may report it via the University compliance and ethics hotline by emailing compliance@austin.utexas.edu.
b. A student who violates a prohibition in this Chapter may be disciplined under the procedures in Chapter 11 of the *Institutional Rules*. A registered student or sponsored student organization that violates a prohibition in this Chapter may be disciplined under the procedures in Chapter 6 of the *Institutional Rules*.
c. A faculty member who violates a prohibition in this Chapter may be disciplined under applicable procedures provided by other rules. If no such procedures exist, violations by faculty members will be referred to the Office of the Executive Vice President and Provost for handling.
d. A staff member who violates a prohibition in this Chapter may be disciplined under applicable procedures provided by other rules. If no such procedures exist, violations by staff members will be referred to Human Resource Services for handling .
e. Authorized University personnel may prevent imminently threatened violations, or end ongoing violations, of a prohibition in this Chapter, by explanation and persuasion, by reasonable physical intervention, by arrest of violators, or by any other lawful measures. Alternatively or additionally, they may initiate disciplinary proceedings under Subsection 13–1202(a), Subsection 13–1202(b), or Subsection 13–1202(c). Discretion regarding the means and necessity of enforcement will be vested in the chief of police, or in University personnel designated by the president, as appropriate, but such discretion will be exercised without regard to the viewpoint of any speaker.
f. University persons and University organizations on the campus will comply with instructions from University administrators and law enforcement officials at the scene. A University person or University organization that complies with an on-the-scene order limiting speech, expression, or assembly may test the propriety of that order in an appeal under Section 13–1203.
g. Off-campus person(s) or organization(s) on the campus who violate a prohibition in this Chapter may be subject to criminal trespass charges, arrest, or other lawful measures.

## Sec. 13–1203. Appeals

a. A person or organization that is denied permission for an activity requiring advance permission under this Chapter may appeal the denial of permission.
b. A University person or organization that complies with an on-the-scene order limiting speech, expression, or assembly may, on or before the fifth business day after complying with the order, file an appeal to determine the propriety of the order limiting the speech, expression, or assembly. The question on appeal will be whether, under the circumstances as they reasonably appeared at the time of the order, the appellant's speech, expression, or assembly should have been permitted to continue. Such an appeal may be useful to clarify the meaning of a rule, or to resolve a factual dispute that may recur if the appellant desires to resume the speech, expression, or assembly that was limited by the order.
c. An appeal authorized by this Section will be heard under the procedures set out in Subchapter 10–400 of the *Institutional Rules*.