**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT THE UNIVERSITY OF TEXAS AT DALLAS, *et al.*,<br>*Plaintiffs,*<br>v.<br>KEVIN P. ELTIFE, *et al.*,<br>*Defendants.* | CASE NO. 1:25-cv-01411 |

**DECLARATION OF KATIE MCGEE**

1. My name is Katie McGee, and I am over the age of 18 and competent in all respects to make this declaration. I am currently the Associate Vice President and Dean of Students at the University of Texas at Austin.

2. The Dean of Students has primary authority and responsibility for the administration of the university process for students alleged to have engaged in conduct that violates a provision or rule defined in the University's *Institutional Rules on Student Services and Activities* or the *Handbook of Operating Procedures*. The Dean of Students delegates authority to, and is represented by, Student Conduct and Academic Integrity during the administration of the conduct process.

3. Following the Legislature's passage of SB 2972, The University of Texas at Austin revised its *Institutional Rules on Student Services and Activities*, including Chapter 13, which applies to Speech, Expression, and Assembly. The revised *Institutional Rules* were approved by the Board of Regents and are posted on the University's website. A copy of the current version of Chapter 13 of the *Institutional Rules* is attached to this declaration.

4. The University's *Institutional Rules* recognize that the University's primary purpose and function is an institution of higher education. Section 13-301 provides, for instance, that except as expressly authorized, "no speech, expression, or assembly may be conducted in a way that disrupts or interferes with: (A) Any teaching, research administration, function of the University, or other authorized activities on the campus; (B) The free and unimpeded flow of pedestrian and vehicular traffic on the campus; or (C) Any public assemblies, distribution of literature, guest speakers, or use of signs, tables, exhibits, or approved amplified sound by the University or another person or organization acting under the rules in this Chapter."



Defendants' Exhibit
**1**

5. The University's *Institutional Rules* specifically recognize that the ability of students living on campus to study, rest, and sleep without disruption is a critical part of the University's educational mission. Section 13-301(2)(F) provides: "As part of the University's educational mission, the University provides dormitories and other living spaces for its students and employees. The University strives to create living spaces that permit a resident to live comfortably, including providing quiet hours to ensure residents have conditions conducive to adequate study, rest, and sleep. With this in mind, any expressive activity in the Common Outdoor Area is deemed disruptive if the sound created by the activity can be heard from a University residence after 10:00 p.m. and before 8:00 a.m. the following morning."

6. The University's primary function as an educational institution is further reflected in policies that limit activities in Common Outdoor Areas of campus that interfere with students' ability to study and live without disruption. Section 13-304(3) of the *Institutional Rules* provides, in relevant part: "In order to protect the core functions inherent to such an institution and its students, faculty, and staff, the Common Outdoor Area is generally open for expressive activity from 8:00 a.m. through 10:00 p.m., subject to this Chapter. Individuals and groups engaging in expressive activity outside of this permitted time period that is disruptive under Section 13-301 are subject to University discipline, removal, and/or arrest by law enforcement."

7. The University's *Institutional Rules* encourage cooperation among participants, administrators, and law enforcement officials to allow expressive activities to continue without disruption and without disciplinary measures. Section 13-301(3) provides, "In cases of marginal or unintentional disruption, administrators and law enforcement officials should clearly state what they consider disruptive and seek voluntary compliance before stopping the event or resorting to disciplinary charges or arrest."

8. The University's *Institutional Rules* impose additional restrictions that apply during the week of final exams and the week immediately preceding final exams. Under Section 13-105(2)(D) of the *Institutional Rules*, the following activities are prohibited during that period: (1) Engaging in expressive activities in Common Outdoor Areas in a manner that materially and substantially disrupts the functioning or educational mission of the University; (2) Inviting speakers to speak on campus; (3) Using Amplified Sound in the Common Outdoor Area; and (4) Using drums or other percussion instruments in the Common Outdoor Areas.

9. The *Institutional Rules* still provide students with a broad range of expressive activities during the final two weeks of the semester. Students may continue to distribute literature under Chapter 13-400, display signs under Chapter 13-500, maintain tables under Chapter 13-600, and display exhibits under Chapter 13-700.

10. The time, place, and manner restrictions that apply during the week of final exams and the week immediately preceding final exams are critical to the academic success of the

University's students and, accordingly, to the University's successful pursuit of its educational mission. The final two weeks of the semester are uniquely important to students' academic success because the work completed during that period has a disproportionate effect on a student's course grades. This is true not only for final exams, which take place during the final week of the semester, but also for work that commonly occurs during the preceding week. For example, students commonly have end-of-semester projects and presentations due during the week before final exams. In many classes, tests and assignments during the week before final exams have a greater point value relative to work done earlier in the semester. In addition, students have a greater opportunity to study during the week before final exams because regular classes are not scheduled. The stakes of academic work during this period are far higher than they are during the rest of the semester. Whether students succeed during the final two weeks has an outsized impact on their academic advancement, their future opportunities, and often their ability to maintain scholarships and other assistance that they need to remain in school. Mental health concerns tend to increase during this period because of the increased pressure students face.

11. The increased significance of student academic work during the final two weeks of the semester means that any disruptive expressive activity will have an outsized impact. Any type of loud amplified or enhanced sound is intensely disruptive during this period because it interferes with end-of-semester projects and presentations. In the past, these types of expressive activities at the end of the semester have created serious problems for students and the University, including prolonged loud noise in common areas adjacent to class buildings, interference with student access to certain areas of campus, and the need to engage in last-minute rescheduling and relocation of final exams so they can occur away from the disruption. The risk of such disruptive activities in Common Outdoor Areas of campus is particularly high because the University has only a limited ability to control activities in those areas or anticipate disruptive events. Under Section 13-901(2) of the *Institutional Rules,* for example, University persons and organizations ordinarily may publicly assemble in Common Outdoor Areas of campus without advance permission. Similarly, under Section 13-1002(1), University organizations ordinarily may present guest speakers in Common Outdoor Areas of the campus without prior notice or approval.

12. Because the final two weeks of the semester are uniquely important to student success, they are central to the University's purpose as an educational institution, which is to promote students' ability to continue to make progress toward their degrees and ultimately graduate. The University has a heightened obligation during this period to protect students' ability to focus on finishing coursework and preparing for final exams without unnecessary distractions or disruptions. Reasonable limits on the use of common areas of the campus for expressive activities by some students during this critical period are necessary to promote the common interest of all the University's students in academic success and the University's interest in fulfilling its core mission to educate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 18, 2025

/s/ Katie McGee
Katie McGee
Associate Vice President and Dean of Students
The University of Texas at Austin