**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN UNIVERSITY STUDENTS AT THE UNIVERSITY OF TEXAS AT DALLAS, THE RETROGRADE NEWSPAPER, YOUNG AMERICANS FOR LIBERTY, INC., ZALL ARVANDI, TEXAS SOCIETY OF UNCONVENTIONAL DRUMMERS, and STRINGS ATTACHED, *Plaintiffs,* | |
| v. | CASE NO. 1:25-cv-01411 |
| KEVIN P. ELTIFE, JANIECE LONGORIA, JAMES C. "RAD" WEAVER, NOLAN PEREZ, M.D., STUART W. STEDMAN, ROBERT P. GAUNTT, CHRISTINA MELTON CRAIN, JODIE LEE JILES, and KELCY L. WARREN, in their official capacities as members of the Board of Regents of The University of Texas System; JOHN M. ZERWAS, M.D., in his official capacity as Chancellor of The University of Texas System; JAMES E. DAVIS, in his official capacity as President of The University of Texas at Austin; and DR. PRABHAS V. MOGHE, in his official capacity as President of The University of Texas at Dallas, *Defendants.* | |

---

**DEFENDANTS' MOTION TO DISMISS**

---

Defendants, The Board of Regents of The University of Texas System and its members; Chancellor John M. Zerwas, M.D.; UT Austin President, James E. Davis; and UT Dallas President, Dr. Rabhas V. Moghe, by and through the Office of the Attorney General of Texas and the undersigned counsel, hereby files this their Motion to Dismiss the action for lack of subject matter jurisdiction due to Plaintiffs' lack of standing, sovereign immunity on the part of all Defendants, and lack of ripeness in the case. Defendants are entitled to Eleventh Amendment

immunity from suit because Defendants are not the ones charged with enforcement of this law and Defendants have not shown any willingness to enforce the challenged portions of their speech codes in the manner alleged by Plaintiffs to be harmful to them. The Court should therefore dismiss all claims against Defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

The Texas Legislature passed SB 2972 in its most recent regular session. SB 2972 modifies Texas Education Code Section 51.9315 in several ways. Importantly, Section 51.9315 was enacted by the Legislature in 2019 to protect freedom of speech on higher education campuses. It operates against college campuses only. The law does not directly impact any college student. There is no enforcement mechanism within the statute to ensure compliance by college campuses.

Protecting freedom of speech remains the goal of the section after the most recent modifications and in fact a new subsection (l) was added to remind campuses that nothing in the section may be used to infringe on a person's right to freedom of speech guaranteed by the First Amendment. Tex. Educ. Code Ann. § 51.9315(l). In addition, the law reminds campuses that when they are enacting a speech policy, they should ensure that any restrictions are narrowly tailored to serve a significant institutional interest, they should employ clear, published, content-neutral, and viewpoint-neutral criteria, provide for ample alternative means of expression, and allow assemblies without a permit. *Id.* § 51.9315(d).

In the interest of preserving actual freedom of expression, SB 2972 said that campus speech policies should prohibit certain things such as intimidation, interference with campus operations, engaging in disruptive demonstrations during the last two weeks of the semester, overnight camping, wearing disguises or masks while protesting and engaging in expressive conduct overnight. SB 2972 is intending to protect the ability of students to study and rest during and just before final exams and during the overnight hours. Given the remainder of this section of the Education Code, there can be no attempt to enforce these prohibitions in a manner that inhibits freedom of expression more than necessary to implement this interest. Plaintiffs have not alleged

that any such attempt has been made. In fact, all the "harms" listed in Plaintiffs' Complaint are hypothetical and speculative.

## STANDARD OF REVIEW

"The district court must dismiss the action if it finds that it lacks subject matter jurisdiction." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Sebelius*, 635 F.3d at 762.

A count should be dismissed when it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint, the main objective is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For a claim to be plausible on its face, the plaintiff must sufficiently plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, plaintiff's legal conclusions need not be accepted as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

## ARGUMENT

This Court lacks subject matter jurisdiction over this case on three grounds. First, Plaintiffs lack standing because their alleged injuries are highly speculative and do not satisfy the injury-in-fact requirement. Second, all Defendants are immune from suit because Texas has not consented to suit, Congress has not clearly abrogated state immunity in this case, and the *Ex parte*

*Young* exception does not apply. Finally, the case is not ripe for review because further factual development is needed. The case should be dismissed.

**A. Plaintiffs Lack Standing.**

Plaintiffs have not established standing to sue. Standing places the burden on the plaintiffs to show they have suffered an injury-in-fact, that the defendants' actions caused the plaintiffs' injury, and that the court's available remedies could make the plaintiffs whole again. Here, Plaintiffs have shown only hypothetical and speculative injuries because none of the Defendants have enforced SB 2972 in the manner Plaintiffs fear, and any chilling effect cannot be tied to Defendants. Plaintiffs also fail to show redressability because an injunction against Defendants' enforcement of SB 2972 would not prevent enforcement by the Dean of Students of policies already promulgated pursuant to SB 2972. In short, Plaintiffs have sued the wrong Defendants and complained about the wrong rule. Plaintiffs lack standing, and this case should be dismissed.

A plaintiff must establish standing "[t]o state a case or controversy under Article III." *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 133 (2011). The elements are: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). The burden is on the party invoking federal jurisdiction to prove each element. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998). And that burden requires plaintiffs to "'demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Analysis for standing significantly overlaps with analysis for *Ex parte Young*. *Air Evac EMS, Inc.*, 851 F.3d at 513–14.

Plaintiffs must establish standing at each successive stage of litigation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, (1992) (noting that standing is an indispensable part of the plaintiff's case, and each element must be supported "with the manner and degree of evidence required at the

successive stages of the litigation."). Thus, although this Court concluded at the preliminary injunction stage that Plaintiffs have standing to sue, ECF 29 at 18, Plaintiffs must continue to show the Court standing exists and Defendants are entitled to challenge it.

Plaintiffs have not shown an injury-in-fact. In pre-enforcement cases, chilling effect can be an injury for standing purposes, but the test is objective. And with any injury, courts must ask whether the plaintiffs' alleged injury is speculative or concrete. Here, SB 2972 has not been enforced against anyone, so Plaintiffs' only possible injury must be a chilling effect. However, Plaintiffs cannot show how SB 2972 actually chills speech when the statute does not regulate the conduct of Plaintiffs or any other college student in Texas.

Self-censorship apart from true government coercion is not a proper basis for standing. *Texas State LULAC v. Elfant*, 52 F.4th 248, 256 (5th Cir. 2022). The Fifth Circuit has recognized that "[t]he chilling effect must have an objective basis; '[a]llegations of a subjective 'chill' are not an adequate substitute . . . ." *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). To establish standing on the basis of a chilling effect, a plaintiff must show (1) he intends to "'engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably . . . proscribed by [the policy in question],' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), *as revised* (Oct. 30, 2020) (quoting *Susan B. Anthony List*, 573 U.S. at 161–64).

Plaintiffs cannot show prongs two and three of the test. First, SB 2792 does not arguably proscribe Plaintiffs' conduct. SB 2792 merely directs institutions of higher education to protect and proscribe certain categories of speech-related conduct in a manner that remains consistent with First Amendment protections. Furthermore, SB 2792 does not mandate the exact language for each institution's policy, and UT Dallas and UT Austin implemented two different responsive policies. Second, the threat of future enforcement of SB 2972 against Plaintiffs or any other student is not substantial. SB 2972 does not directly regulate Plaintiffs; rather, it regulates "institution[s] of higher education." SB 2972 § 2(f). Plaintiffs are students and student groups, not institutions

of higher education. Enforcing SB 2972 means each institution in the UT System revises its campus speech policies. Again, Plaintiffs' true complaint is against each individual campus policy, not SB 2972 itself. Plaintiffs therefore have no standing to challenge SB 2972 because SB 2972 cannot be enforced against them.

Additionally, three of the Plaintiffs individually lack standing to challenge the Overnight Ban. Plaintiffs Young Americans for Liberty (YAL), Zall Arvandi, and Texas Society for Unconventional Drummers (SOUnD) independently lack standing to challenge the Overnight Ban from SB 2972 because they face no threat of injury for any non-disruptive expressive activity between 10:00 p.m. and 8:00 a.m. Although UT Austin amended its *Institutional Rules* in compliance with SB 2972, UT Austin did not impose a blanket ban on expressive activities overnight. Specifically, the only rule that applies during the Overnight Ban's timeframe is a limitation on "expressive activity . . . that is disruptive under Section 13-301." *Institutional Rules* Sec. 13-304(3). Far from a blanket ban, no policy "will force YAL, its members, and Arvandi to cease speaking to one another (or to others) about their political views (and for all other noncommercial purposes) when the clock strikes 10:00." Motion at 13. And when "rehearsals extend beyond—or end shortly before—10 P.M., or when members discuss music in person or over campus internet message after dark," neither SOUnD nor any UT student will face consequences. *Id.* at 14. None of the UT Austin Plaintiffs can establish an injury-in-fact based on the Overnight Ban because it does not apply at UT Austin.

Even if Plaintiffs could show an injury-in-fact, SB 2972 is not to blame. And enjoining Defendants' ability to enforce SB 2972 would do nothing to redress Plaintiffs' alleged injuries. Again, because SB 2972 merely directs institutions of higher education to adopt certain speech-related policies, SB 2972 itself cannot be said to cause Plaintiffs' alleged injuries. Enjoining SB 2972 would also be futile as a remedy because it would not undo the revisions made to the speech codes at the regulated institutions.

Additionally, Plaintiffs sued only two of the nine UT System universities. SB 2972 regulates the institutions, not the students. It regulates the institutions by directing each one to

adopt a policy protecting and prohibiting certain student conduct. Each institution thus has a unique policy with unique officials charged with its enforcement. Plaintiffs must therefore sue the relevant actor at each UT System institution individually.

Aiming to enjoin restrictions on campus speech, Plaintiffs missed the mark and hit SB 2972 instead. Enjoining SB 2972 merely prevents UT System institutions from implementing new policies pursuant to their SB 2972 duty. It does nothing to halt enforcement of the policies that are already in place. Plaintiffs have no injury-in-fact; they have no standing; they have no case or controversy with SB 2972.

**B. All Defendants are immune from suit.**

*Ex parte Young* does not apply to remove Defendants' immunity from suit. Under the narrow *Ex parte Young* exception, courts consider whether the plaintiffs are seeking prospective relief against a state official who they allege is engaged in an ongoing violation of federal law. Here, Plaintiffs argue the exception applies to all Defendants—UT System Board of Regents and its individual members, Chancellor Zerwas, UT Austin President Davis, and UT Dallas President Moghe. But Plaintiffs have failed to show enforcement authority on the part of any Defendant that reaches beyond general authority, which is insufficient for *Ex parte Young*. They have likewise failed to show how the Defendants have manifested a demonstrated willingness to enforce SB 2972 in a manner violative of federal law, and they have failed to show that the Defendants have compelled or constrained any student pursuant to SB 2972. Therefore, *Ex parte Young* does not apply and Defendants are immune from suit.

"In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). That immunity "also prohibits suits against state officials or agencies that are effectively suits against a state." *Id.* To overcome the state's sovereign immunity in this case, Plaintiffs must show that Texas has waived its immunity by consenting to this suit or that Congress has expressly abrogated it. *Id.* Neither exception applies here.

Plaintiffs' only recourse is *Ex parte Young*—"a narrow pathway to overcome sovereign immunity." *Mi Familia Vota v. Abbott*, 105 F.4th 313, 330 (5th Cir. 2024). The exception allows "suits for prospective . . . relief against state officials acting in violation of federal law" in certain circumstances. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). For the *Young* exception to apply, "three criteria must be satisfied: (1) A plaintiff must name individual state officials as defendants in their official capacities; (2) the plaintiff must allege an ongoing violation of federal law; and (3) the relief sought must be properly characterized as prospective." *Tawakkol v. Vasquez*, 87 F.4th 715, 720 (5th Cir. 2023) (citation omitted).

To meet the first of *Young*'s criteria not just any state official will do; rather, Plaintiffs must name an official who has "sufficient connection [to] the enforcement" of the challenged statute. *Young*, 209 U.S. at 157; *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). The Fifth Circuit follows three guideposts for discerning whether the requisite *Ex parte Young* nexus exists. *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2024) (citing *Texas All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)). The guideposts are: "(1) the state official has 'more than the general duty to see that the laws of the state are implemented,' *i.e.*, a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law.'" *Id.* (quoting *Texas All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (quotation marks and citation omitted).

First, particular duty. When an official is "specially charged with the duty to enforce [a] statute," that official is the proper defendant. *Mi Familia Vota*, 28 F.4th at 326 (quoting *Ex parte Young*, 209 U.S. 123, 158 (1908)). And a "provision-by-provision analysis" is required: "the official must have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 280 (1997) (noting that a "case-by-case approach to the *Young* doctrine has been evident from the start).

Second, demonstrated willingness. The requisite connection attaches only when "the official has a 'demonstrated willingness' to enforce the challenged statute" manifested in "some step to enforce the statute." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 329 (5th Cir. 2024) (citations omitted). "[T]he bare minimum appears to be 'some scintilla' of affirmative action by the state official." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 329 (5th Cir. 2024) (quoting *Texas Democratic Party I*, 961 F.3d at 401). The same is true in the case of a pre-enforcement challenge. *Id.* (quoting *Texas Democratic Party I*, 961 F.3d at 401).

In the absence of "a demonstrated willingness to exercise [their] duty" public officials cannot be sued under *Ex parte Young*, even where the named official clearly has enforcement authority. *Nat'l Press Photographers Ass'n*, 90 F.4th at 786 (holding that Texas department head could not be sued to enjoin enforcement of Tex. Gov. Code ch. 423 even when his department had authority to make arrests and citations for violations of the statute); *see also Knife Rights, Inc. v. Garland*, No. 4:23-CV-00547-O, 2024 WL 2819521 at *4 (N.D. Tex. June 3, 2024) (ruling that preemption challenge to federal statute was not justiciable when officials had not enforced the act since 2010). Sovereign immunity bars suit until the official has taken "some step to enforce the statute." *Ogg*, 105 F.4th at 329 (ruling that district attorney was immune from suit because she had not taken any enforcement action).

Third, the state official's conduct must compel or constrain persons to obey the challenged law. This inquiry involves determining what "enforcement" means in the context of the statute at issue. *Mi Familia Vota*, 105 F.4th at 332. The Fifth Circuit has generally defined "enforcement" as "compulsion or constraint." *Texas Alliance for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (quoting *City of Austin*, 943 F.3d at 1000) (internal quotation marks omitted). Authority to enforce a policy alone is insufficient to show "compulsion or constraint." *City of Austin*, 943 F.3d at 1001. And this third prong has redressability in mind: "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 332 (5th Cir. 2024) (quoting *Texas All.*, 28 F.4th at 672).

1. ***The UT System Board of Regents is not a proper defendant.***

The Board itself is immune from suit. *Ex parte Young* does not apply to suits against states or state agencies. This includes universities and boards of regents, like the one here. *See Students for Justice in Palestine v. Abbott*, 756 F. Supp. 3d 410, 418 (W.D. Tex. 2024); *see also*, *e.g.*, *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (concluding that UT Austin is a state entity protected by sovereign immunity); *Doe v. Harrell*, 841 F. App'x. 663, 668 (5th Cir. 2021) (concluding that UT System's Board of Regents is a state entity protected by sovereign immunity). Therefore, Plaintiffs' claims against the UT System Board of Regents are jurisdictionally barred.

2. ***The individual members of the UT System Board of Regents are not proper defendants.***

The individual members are also not proper defendants because there is no enforcement nexus. Defendants do not dispute that the UT System Board of Regents is a governing authority for the UT System institutions. But general authority does not equal *Ex parte Young* enforcement, especially when Plaintiffs' alleged injuries are tied to specific policies at several universities and the Defendants sued are not the identified enforcement officers of those policies.

Indeed, the Board has general governing authority over the UT System. Texas law authorizes the UT System Board Defendants "to promulgate and enforce such other rules and regulations for the operation, control, and management of the university system and the component institutions thereof as the board may deem either necessary or desirable." Tex. Educ. Code § 65.31(c). But *Ex parte Young* requires more than general authority; rather, the Board must be charged with enforcing the particular policy at issue and show "a demonstrated willingness to exercise that duty." *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)) (internal quotation marks omitted).

Plaintiffs rely on *Jackson v. Wright*, but that reliance is misplaced. 82 F.4th 362, 365 (5th Cir. 2023); *See* ECF No. 19 at 2 ("If university board members with no direct role in a First Amendment violation were the 'right defendants' under *Ex parte Young* in *Jackson*, then Defendants are the 'right defendants' here."). In *Jackson*, it was the university board who directed

each constituent university to adopt policies for faculty hiring, promotion, grievances and other like subjects. *Jackson v. Wright*, 82 F.4th 362, 365 (5th Cir. 2023). Thus, when a professor sued over an alleged First Amendment retaliation claim, the Fifth Circuit held the board's role as the university's governing body meant the defendants had "'some connection with the enforcement' of the challenged law or policy." *Id.* at 367 (quoting *Ex parte Young*, 209 U.S. at 157). The Board members had governing authority over the people who directly caused the plaintiff's injury and the Board itself played more than a passive role in the plaintiff's injury by ignoring his request for relief from the Board. *Id.* at 368.

Here, the Board members are a mere middleman. The Texas Legislature, through SB 2792,—not the Board of Regents—directs each university to draw up the policies at issue. And the Dean of Students—again, not the Board of Regents—drafts and enforces the policies. The Board of Regents merely gives approval to policies that are driven by SB 2792 and drafted and enforced by the Dean of Students. Therefore, the Board here functions more like the state attorney general in *Texas Democratic Party*. *See Texas Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020) (holding that a state attorney general's "general duty to enforce the law" does not satisfy the *Ex parte Young* enforcement nexus.).

The UT System Board members have no particular duty to enforce SB 2972. Rather, their duties are general in nature. And even if they had a particular duty here, no person or entity has demonstrated any willingness to enforce SB 2972 in the ways the Plaintiffs speculate it will be enforced. Finally, there has been no compulsion or constraint. Even granting that chilling effect is evidence of constraint, there is no such effect here because there is no reasonable basis to conclude SB 2972 will be enforced in the alleged manner. In any case, the Board members will not be doing the enforcement.

In sum, the Board's general duties fail to make it the enforcer of SB 2792 and *Ex parte Young* does not apply to remove sovereign immunity from the individual board members.

### 3. *Chancellor Zerwas, UT Austin President, Davis, and UT Dallas President, Moghe are likewise not proper defendants.*

No nexus ties the remaining Defendants to SB 2972 enforcement either. Like the individual members of the UT System Board of Regents, Chancellor Zerwas and Presidents Davis and Moghe are not responsible for enforcing SB 2972 or the responsive policies. True, all three have general enforcement authority, but the particular authority to enforce university free speech policies is delegated to the Dean of Students at each institution. And although in a general sense, they have oversight over the Dean of Students, neither Chancellor Zerwas, nor President Davis, nor President Moghe has particular duty or demonstrated willingness with regard to these policies, and none of them have applied any compulsion or constraint to any student. Therefore, they are all immune from suit.

Plaintiffs argue that Chancellor Zerwas's role in recommending the Board Defendants approve UT Austin's and UT Dallas's implementation of SB 2972 renders him complicit. Plaintiffs cite *Coal. for Indep. Tech. Rsch. v. Abbott*, but although that case involved a university chancellor and laws requiring universities to adopt certain policies as in this case, there are two significant differences in this case. ECF No. 19 at 3; 706 F. Supp. 3d 673, 683 (W.D. Tex. 2023). First, in *Coal. for Indep. Tech. Rsch.*, the court noted that the University of North Texas (UNT) chancellor's lack of immunity from suit was undisputed. 706 F. Supp. 3d at 683. Second, the law at issue in that case required all state agencies to ban their employees from using TikTok on government-issued devices. *Id.* at 680. Thus, pursuant to the ban, UNT promulgated such a policy that applied to its faculty. *Id.* Contrariwise here, the revised policies primarily constrain the behavior of students, not faculty, and although Chancellor Zerwas "has direct line responsibility for all aspects of the UT System's operations," the Dean of Students at each institution, not the chancellor of the entire system, is the official charged with enforcement of policies constraining the behavior of students. Univ. of Tex. Sys. Bd. of Regents R. 20101.

Here, Plaintiffs look to *Spectrum WT v. Wendler*, which was recently vacated and will be reheard en banc.[1] *Spectrum WT v. Wendler*, 151 F.4th 714 (5th Cir. 2025), *reh'g en banc granted, opinion vacated*, No. 23-10994, 2025 WL 3008019 (5th Cir. Oct. 27, 2025). But the West Texas A&M University president in *Spectrum WT* affirmatively acted on behalf of the university by emailing the student body, and this action caused the plaintiffs' alleged injury. *Id.* at 720. By contrast here, Plaintiffs have not alleged that either UT Austin President Davis or UT Dallas President Moghe have taken any affirmative actions that would show they have more than general enforcement authority that is insufficient for *Ex parte Young* to apply. Plaintiffs allege only that "President Davis is the chief executive officer of UT Austin with 'general authority and responsibility for the administration of that institution,'" Plfs' Compl. ¶ 32 (citing Univ. of Tex. Sys. Bd. of Regents R. 20201 § 4), and "President Moghe is the chief executive officer of UT Dallas with 'general authority and responsibility for the administration of that institution.'"Plfs' Compl. ¶ 33 (citing Univ. of Tex. Sys. Bd. of Regents R. 20201 § 4). In short, Plaintiffs have not shown that Chancellor Zerwas, President Davis, or President Moghe have a particular duty to enforce SB 2972.

Nor have they shown these Defendants have demonstrated willingness. Plaintiffs' complaint speculates that the defendant universities may enforce the end of semester and overnight moratoriums in a variety of unconstitutional ways. However, there is no actual evidence of such enforcement plans by the universities. There is no record of a willingness to enforce the speech policies in an unconstitutional manner. In fact, both speech policies attached to the complaint make it clear that any enforcement will only come after a warning and the opportunity to desist. No one will be caught by surprise. *Ogg*, 105 F.4th at 329–30;

Finally, Plaintiffs have not shown any compulsion or constraint. Plaintiffs have not alleged a single action that could be taken to portend enforcement by the named Defendants that would

---

[1] Elsewhere, Plaintiffs cite *Roake v. Brumley*, 141 F.4th 614, 639 (5th Cir. 2025), which has similarly been vacated and will be reheard en banc. ECF 19 at 3; *Roake v. Brumley*, 154 F.4th 329 (5th Cir. 2025). Both *Roake* and *Spectrum WT* are no longer good law.

create the expected harms. Nor have they indicated statements that imply a willingness to enforce the provisions of the speech codes in the manner they have challenged. Since "here there is not a scintilla of enforcement", plaintiffs cannot avail themselves of *Young*'s exception to sovereign immunity. *Nat'l Press Photographers Ass'n*, 90 F.4th at 786–87.

All Defendants are immune from suit. The Board of Regents is not a state official, and the individual defendants all lack particular duty and demonstrated willingness to enforce SB 2972. Plaintiffs have also failed to show any enforcement—compulsion or constraint—of any student pursuant to SB 2972. Because Defendants all enjoy Eleventh Amendment immunity from suit, the Court lacks subject matter jurisdiction over the instant suit. *Koehler v. United States*, 153 F.3d 263, 267 (5th Cir. 1998) (stating "sovereign immunity deprives the courts of jurisdiction irrespective of the merits of the underlying claim."). Accordingly, the case should be dismissed.

**C. Plaintiffs' Claims Are Not Ripe for Review.**

Plaintiffs have sued too soon. Questions remain that need further factual development, and the case is not ripe for review. On a ripeness question courts look to the fitness of the issues and hardship to the parties. Here, because the questions presented are not pure questions of law but rather require further factual development, the case fails the test. Specifically, questions remain as to how each individual institution's policy will function and how each will be enforced. Additionally, Plaintiffs would not suffer hardship if the court withholds consideration because there is no reasonable basis to assume SB 2972 will be enforced against Plaintiffs in the manner they fear. The case should be dismissed.

"A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (quoting *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir. 1987)). Courts apply a two-factor test: (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Braidwood Mgt., Inc. v. Equal Empl. Opportunity Comm'n*, 70 F.4th 914, 930 (5th Cir. 2023) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

The first factor is satisfied when a claim presents pure questions of law and no further factual development is required. *Braidwood Mgt., Inc. v. Equal Empl. Opportunity Comm'n*, 70 F.4th 914, 930 (5th Cir. 2023) (quoting *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir. 1987)). In other words, if a claim depends on "'future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe." *Braidwood Mgt., Inc. v. Equal Empl. Opportunity Comm'n*, 70 F.4th 914, 930–31 (5th Cir. 2023) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). The analysis is on a case-by-case basis. *Braidwood Mgt., Inc. v. Equal Empl. Opportunity Comm'n*, 70 F.4th 914, 930–31 (5th Cir. 2023) (citing *Orix*, 212 F.3d at 896).

Although it is enough if "the injury is certainly impending," the relevant question is whether litigants "'remain under a constant threat' that government officials will use their power to enforce the law against them." *Braidwood Mgt., Inc. v. Equal Empl. Opportunity Comm'n*, 70 F.4th 914, 932 (5th Cir. 2023) (citing *Union Carbide*, 473 U.S. at 581; *Tandon v. Newsom*, --- U.S. ----, 141 S. Ct. 1294, 1297 (2021) (per curiam)).

The second factor inquires into hardship to the parties, which is a more fact-intensive inquiry. *See, e.g.*, *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (looking to specific facts to determine whether the plaintiffs would suffer hardship). And here, Plaintiffs have shown no hardship because SB 2972 itself does not constrain Plaintiffs' First Amendment activities. Therefore, delaying adjudication until a factual record is developed regarding how the policies promulgated pursuant to SB 2972 will be enforced poses no risk of hardship. The parties will not suffer sufficient hardship if the court withholds consideration that would render the case ripe as a prudential matter.

This case is not ripe for review. Without any insight into how the individual policies will be enforced, several factual questions remain. And because SB 2972 does not directly regulate Plaintiffs, Plaintiffs will suffer no hardship from delayed adjudication. Accordingly, this Court should dismiss this case.

## Conclusion

For the foregoing reasons, this case should be dismissed.

Date: November 10, 2025

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
COUNSEL FOR THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on November 10, 2025, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

JT MORRIS (Tex. Bar No. 24094444)
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION (FIRE)
(215) 717-3473
700 Pennsylvania Ave., Suite 340
Washington, DC 20003
jt.morris@thefire.org

ADAM STEINBAUGH (Cal. Bar No. 304829)*
SARA BERINHOUT (Mass. Bar No. 703217)*
HANNAH ABBOTT (Pa. Bar No. 337123)*
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
adam@thefire.org
sara.berinhout@thefire.org
hannah.abbott@thefire.org

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel